NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WARREN HAVENS, et al. <br><br> Plaintiffs, <br> v. <br><br> MOBEX NETWORK SERVICES, LLC, et al., <br><br> Defendants. | Civ. Action No. 11-993 (KSH) <br><br><br> OPINION |

**Katharine S. Hayden, U.S.D.J.**

### I.   Introduction

On December 22, 2011, the Court granted in part and denied in part a motion to dismiss brought by defendants Mobex Network Services, LLC, Mobex Communications, Inc., Maritime Communications/Land Mobile LLC, Paging Systems, Inc., and Touch Tel Corporation (collectively "defendants"). [D.E. 30, 31.] Plaintiffs Warren Havens, Skybridge Spectrum Foundation, Telesaurus, VPC, LLC, AMTS Consortium LLC, Intelligent Transportation & Monitoring, LLC, and Telesaurus GB, LLC (collectively "plaintiffs") have now brought a motion for reconsideration.

### II.   Factual Background and Procedural History

The factual background and procedural history of this case were discussed in the Court's opinion on defendants' motion to dismiss [D.E. 30 (hereinafter "Mot. Dismiss. Op.")] and need not be recounted in depth here. In pertinent part, the underlying facts as recited in the opinion are as follows:

1

This case revolves around FCC-issued AMTS licenses. "AMTS is a common-carrier Commercial Mobile Radio Service . . . licensed throughout the United States, which provides when in operation voice and communications to customers." ([Second Am. Compl.] ¶ 16.) Originally created for the benefit of maritime customers along coastal and navigable water routes, it has expanded to include land service along the Northeast Corridor. (*Id.*) AMTS licenses fall into two categories: Site-Based and Geographic. A Site-Based license is a "license issued by the FCC on a first-come, first-served basis, at no cost (except for nominal application processing fees)." (*Id.* ¶ 17.) These licenses provide for operation only at a specific station whose location is provided in the license. (*Id.*) Until 2004, all AMTS licenses were Site-Based. (*Id.* ¶ 18.)

The second type of license is a Geographic license, which is "issued by the FCC to a high bidder in a public auction, which authorizes to the licensee exclusive use of specified radio frequencies to construct and operate wireless telecommunications stations within a defined wide geographic area." (*Id.* ¶ 17.) The FCC began auctioning AMTS Geographic licenses in 2004. (*Id.* ¶ 18.)

To protect Site-Based license holders whose licenses incorporate areas located within the same area granted in a Geographic license, FCC regulations provide that Site-based stations are entitled to "continue their station operations without excessively close-spaced co-channel Geographic-Licensed Stations that may cause radio interference." (*Id.*) To that end, "the Geographic Licensee [may] build and operate stations no closer than a certain range of lawful stations operated under a valid co-channel (same frequencies) Site-based AMTS license." (*Id.* ¶ 21.) That distance is the shorter of 120 kilometers and the actual transmitting distance of the Site-Based station as determined through a specific, technical formula. (*Id.* (citing 47 C.F.R. § 80.385).) If a Site-Based license is terminated, revoked, or found invalid, its covered radio frequencies will revert to the overlapping Geographic license for that area. (*Id.* ¶ 18.)

The plaintiffs in this case collectively hold AMTS Geographic Licenses covering a majority of the United States, including New Jersey. (*Id.* ¶ 19.) Defendants hold the AMTS Site-Based licenses in various places across the country including New Jersey. (*Id.* ¶ 20.) Plaintiffs assert that Site-Based licensees are expected to provide information to the overlapping Geographic licensees so that the Geographic licensees may calculate the Site-Based station's transmitting distance. (*Id.* ¶ 22.)

> Plaintiffs and defendants are competitors, and plaintiffs complain that defendants have failed to provide them with the necessary information to allow them to know the protected contour of the defendants' stations. (*Id.* ¶ 23.) Defendants have refused to provide this information notwithstanding three FCC "Cooperation Orders" and the FCC's regulatory disclosure requirements. (*Id.*)

(Mot. Dismiss Op. 3–4.)

The second amended complaint set forth three counts against defendants: demand for an injunction under 47 U.S.C. § 401(b); violation of numerous provisions of the Federal Communications Act ("FCA") and its implementing regulations under 47 U.S.C. §§ 206 and 207; and violation of the Sherman Act, 15 U.S.C. §§ 1–2. (*See generally* Second Am. Compl.)

On December 22, 2011, the Court granted in part and denied in part defendants' motion to dismiss. Specifically, the Court held that plaintiffs failed to state a claim under the two FCA counts and one of the two theories of Sherman Act liability. (Mot. Dismiss Op. 10–16, 20–22.) The Court denied the motion to dismiss as to one theory of Sherman Act liability, and the Court also rejected numerous arguments to dismiss the case on res judicata and collateral estoppel grounds. (*Id.* at 7–10, 19–20.)

On January 11, 2012, plaintiffs filed a motion for reconsideration, asserting that the Court erred in granting the motion to dismiss the two FCA claims.[1] [D.E. 34.] On January 23, 2012,

---

[1] Although the Court filed its order and the accompanying opinion on December 22, 2011, they were not entered until December 28, 2011. Because time does not begin to run until the order is entered, plaintiffs' January 11, 2012 motion for reconsideration satisfies the 14-day time limit under Local Civil Rule 7(i). *See Walzer v. Muriel Siebert & Co.*, No. 04-5672, 2005 U.S. Dist. LEXIS 27165 (D.N.J. Sept. 15, 2005) (Debevoise, J.).
    The Court must note, however, that plaintiffs have failed to comply with Local Civil Rule 7.2(c), which requires that "[a]ll margins shall be not less than one inch on sides, top, and bottom." The margins on plaintiffs' letter brief are slightly over one-half inch on the right and bottom and three-quarters of an inch on the top and left. The Court will excuse this deficiency on this occasion but will strike any future briefs that fail to comply with the Court's rules.

defendants Paging Systems, Inc. and Touch Tel Corporation filed a letter brief in opposition. [D.E. 44.]

### III.   Standard of Review

Local Civil Rule 7.1(i) provides parties the right to file a motion for reconsideration within 14 days of the entry of an order or judgment on a motion. "[T]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Champion Labs., Inc. v. Metex Corp.*, 677 F. Supp. 2d 748, 750 (D.N.J. 2010) (Walls, J.) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986)). Generally, "parties seeking reconsideration must show '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . or (3) the need to correct a clear error of law or fact to prevent manifest injustice.'" *Id.* (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 667 (3d Cir. 1999)). "Reconsideration is justified only when 'dispositive factual matters or controlling decisions of law . . . were presented to, but not considered by, the court in the course of making the decision at issue." *Id.* (quoting *Yurecko v. Port Auth. Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 609 (D.N.J. 2003) (Linares, J.)).

Local Civil Rule 7.1(i) requires the moving party to submit "[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge . . . has overlooked." A motion for reconsideration is improper "when it is used 'to ask the Court to rethink what it had already thought through ― rightly or wrongly.'" *Freeman v. McGreevey*, No. 03-3140, 2011 U.S. Dist. LEXIS 76456, at *4 (D.N.J. July 14, 2011) (Hayden, J.) (quoting *Oritani S&L v. Fidelity & Deposit*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (Ackerman, J.)).

Reconsideration of a judgment is an extraordinary request, and motions to reconsider are granted sparingly. *Id.* (citing *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986) (Brotman, J.)).

## IV. Discussion

Plaintiffs' motion for reconsideration does not involve new evidence or an intervening change in law. Rather, it asserts that the Court's original decision contains clear errors of fact and law requiring correction to prevent a manifest injustice.

### A. Availability of Relief Under 47 U.S.C. § 401(b)

Plaintiffs first argue that the Court erred by failing to construe certain regulations, particularly 47 C.F.R. § 80.385(b)(1) and 47 C.F.R. § 80.70(a), as orders. Plaintiffs assert that the Court failed to appreciate that these regulations place restrictions on geographic licensees like plaintiffs, and that it is impossible for a geographic licensee to comply with these regulations absent the information that plaintiffs seek to have the Court order defendants to disclose. (Moving Br. 3–6.) The Court addressed this argument in its motion to dismiss opinion, stating:

> Similarly, 47 C.F.R. § 80.385(b)(1) also does not "require[] a particular action to be taken by a defendant," *Mallenbaum* [*v. Adelphia Commc'ns Corp.*, 74 F.3d 465, 468 (3d Cir. 1996)], because it dictates only where a Geographic licensee may locate its stations, not what technical details the Site-Based licensees must disclose. In the absence of an FCC order against defendants on this issue, the Court may not enter an injunction requiring defendants' compliance, and plaintiffs have failed to state a claim.

(Mot. Dismiss Op. 14.)

The Court did not explicitly address arguments involving 47 C.F.R. § 80.70(a), which plaintiffs recited in the second amended complaint (*See* Second Am. Compl. ¶ 22) but did not mention in their opposition to the motion to dismiss.

47 C.F.R. § 80.385(b)(1) states:

> The AMTS geographic area licensee must locate its stations at least 120 kilometers from the stations of co-channel site-based AMTS licensees. Shorter separations between such stations will be considered by the Commission on a case-by-case basis upon submission of a technical analysis indicating that at least 18 dB protection will be provided to a site-based licensee's predicted 38 dBu signal level contour. The site-based licensee's predicted 38 dBu signal level contour shall be calculated using the F(50, 50) field strength chart for Channels 7-13 in § 73.699 (Fig. 10) of this chapter, with a 9 dB correction for antenna height differential. The 18 dB protection to the site-based licensee's predicted 38 dBu signal level contour shall be calculated using the F(50, 10) field strength chart for Channels 7-13 in § 73.699 (Fig. 10a) of this chapter, with a 9 dB correction factor for antenna height differential.

Similarly, 47 C.F.R. § 80.70(a) states:

> Coast stations which transmit on the same radio channel above 150 MHz must minimize interference by reducing radiated power, by decreasing antenna height or by installing directional antennas. Coast stations at locations separated by less than 241 kilometers (150 miles) which transmit on the same radio channel above 150 MHz must also consider a time-sharing arrangement. The Commission may order station changes if agreement cannot be reached between the involved licensees.

As the Court noted when deciding the motion to dismiss, the Third Circuit has held that "an agency regulation should be considered an 'order' if it requires a defendant to take concrete actions." (Mot. Dismiss Op. 12 (quoting *Mallenbaum*, 74 F.3d at 468)). The problem with plaintiffs' claim under section 401(b) is that it asks the Court to take regulations directed at plaintiffs and construe them to impose implied disclosure requirements on defendants. Even if disclosure is necessary for plaintiffs to comply with the limitations set forth in these regulations, no disclosure requirement appears on the regulations' face, thus leaving any such requirement to implication. Although agency regulations may act as orders in section 401(b) claims, the cited regulations require no "concrete actions" on defendants' part. To issue an injunction requiring

6

disclosure, the Court would need to fill gaps in the regulations. Such a ruling would require independent judgments about FCC intent. Because the action would extend beyond "enforcement" of an FCC order, plaintiffs have not stated a claim under section 401(b).

Plaintiffs additionally argue that the Court's decision was premature because section 401(b) states that "[i]f, after hearing, [the district court] determines that the order was regularly made and duly served, and that the person is in disobedience of the same," an injunction should be entered to prevent continued disobedience. (*See* Moving Br. 7.) But as discussed above, the orders at issue here do not establish grounds for the Court to enter an injunction requiring defendants' cooperation in disclosure. Therefore, it would be a pointless exercise to hold a hearing to determine if the orders were "regularly made and duly served" when those orders could not be the basis for providing plaintiffs their sought-after relief.

### B. Private Right of Action under 47 U.S.C. §§ 206 and 207

Plaintiffs next argue that the Court erred by dismissing the count brought pursuant to 47 U.S.C. §§ 206 and 207. Plaintiff essentially argues that the Court placed too much emphasis on the end result of "warehousing" spectrum because "it is not the warehousing per se that gives rise to the § 206 and § 207 claims, but the Defendants' violation of fundamental FCC rules and regulations that led to the warehousing and resultant injury to the Plaintiffs." (Moving Br. 8.)

The distinction between the underlying violations culminating in warehousing and warehousing itself was not lost on the Court. Rather, just as plaintiffs did in their brief opposing the motion to dismiss, the Court drew parallels to warehousing when evaluating the substance of the claim. By drawing those parallels, the Court determined that the absence of FCC precedent on this issue precluded a section 207 claim. (*See* Mot. Dismiss Op. 16.)

7

To support their claim that the Court erred on this issue, plaintiffs cite three different sections of FCC rules and regulations. (Moving Br. 8 (citing 47 C.F.R. §§ 1.946(c), 1.955(a)(2), (3), 80.49(a)(3)).) Their content is straightforward: site-based AMTS licensees, such as defendants, must make an authorized station or frequency operational within two years or their license automatically terminates; termination occurs without any specific FCC action. *See* 47 C.F.R. §§ 1.946(c), 1.955(a)(2), (3), 80.49(a)(3). The plaintiffs allege that defendants failed to construct or maintain their required stations (Second Am. Compl. ¶ 27), so defendants' frequencies should have automatically reverted to plaintiffs because plaintiffs are the holders of the geographic license for the pertinent area, s*ee* 80 C.F.R. § 380.385(c).

Section 207 provides that "[a]ny person claiming to be damaged by any common carrier subject to the provisions of this Act may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery damages for which such common carrier may be liable under the provisions of this Act, in any district court of the United States of competent jurisdiction." If a common carrier does or causes or permits to be done "any act, matter, or thing in this Act prohibited or declared to be unlawful, or shall omit to do any Act, matter, or thing in this Act required to be done," then that common carrier is liable to the injured party. 47 U.S.C. § 206.

At first blush, the scope of relief available under sections 206 and 207 appears all-encompassing. However, the Court does not write on a blank slate, and particularly significant here is the Supreme Court's decision in *Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 550 U.S. 45 (2007). There, the Court began its opinion with a detailed historical explanation of the FCA's evolution alongside the Interstate Commerce Act. *Global Crossing*, 550 U.S. at 48–50. As relevant here, the Court observed that sections

8

201(b) and 207 both date back to the original FCA.  At that time, regulation often operated through tariff approvals and related filings rather than through the robust and sophisticated regulatory regime that is more familiar today.  *See id.*

*Global Crossing* involved a payphone operator that brought a suit under section 207 against a long-distance carrier for failing to make payments.  At issue were regulations in which the FCC established rates for long-distance phone carriers to use when reimbursing payphone operators.  *See id.* at 51–52 (citing 47 C.F.R. § 64.1300(d) (2005)).  In implementing these regulations, the FCC had determined that a failure to pay the set rates constitutes an "unreasonable practice" within the meaning of section 201(b).  *Id.* at 52 (citing *In re the Pay Telephone Reclassification and Compensation Provisions of the Telecommunications Act of 1996*, 18 FCC Rcd. 19975, 19990, ¶ 32 (2003)).

The Court's analysis began by explaining the statutory framework for a private right of action under section 207.  Specifically, the Court noted that section 206 refers explicitly to whether the defendant's conduct has been "declared to be unlawful," and that section 201(b) "declared 'unlawful' any common-carrier 'charge, practice, classification, or regulation that is unjust or unreasonable.'"  *Id.* at 53.  Referencing the history of the FCA and the Interstate Commerce Act, the Court held that "the purpose of § 207 is to allow persons injured by § 201(b) violations to bring federal-court damages actions," and that "the FCC has long implemented § 201(b) through the issuance of rules and regulations," including rules and regulations that "take the form of FCC approval or prescription for the future of rates that exclusively are 'reasonable.'"  *Id.* at 53.  Because a violation of a regulation implementing section 201(b) is the equivalent of violating section 201(b) itself, private litigants may bring claims based on such regulatory violations.  *Id.* at 54.  The crucial question for determining the availability of a private

9

right of action is therefore "whether the particular FCC regulation before us lawfully implements § 201(b)'s 'unreasonable practice' prohibition." *Id.* at 55.

In *Global Crossing*, the Supreme Court ruled that because the FCC implementation decision citing section 201(b) was reasonable, it was lawful. *See id.* at 55–57. Notably, as the Court explained, "[w]e do not suggest that the FCC is required to find carriers' failures to divide revenues to be § 201(b) violations in every instance. . . . Nor do we suggest that every violation of FCC regulations is an unjust and unreasonable practice." *Id.* at 56. But in that particular context, the FCC's determination that a failure to follow its order was an unreasonable practice was a proper and enforceable. *Id.* As the Court explained, Congress gave the FCC authority "to apply § 201 through regulations and orders with the force of law." *Id.* at 58. Even though the statutory provision under which the pertinent regulations were enacted was 47 U.S.C. § 276, and not section 201 itself, the FCC nevertheless "properly implements § 201(b) when it reasonably finds that the failure to follow a Commission, *e.g.*, rate or rate-division made under a *different* statutory provision is unjust or unreasonable under § 201(b)." *Id.* at 59–60. Additionally, the Court noted, "in resting our conclusion upon the analogy with rate setting and rate divisions, the traditional, historical subject matter of § 201(b), we avoid authorizing the FCC to turn §§ 201(b) and 207 into a back-door remedy for violation of FCC regulations." *Id.* at 60. The Supreme Court's analysis demonstrates that to state a claim for relief under 47 U.S.C. § 207, a plaintiff must tether defendant's alleged conduct to either a statutory provision declaring conduct unlawful or, if the conduct violates a regulation, the FCC must have found that the regulation relates back to a statute declaring conduct unlawful.

The Ninth Circuit has adopted a particularly stringent view of this interpretation, holding in *North County Communications Corp. v. California Catalog & Technology*, 594 F.3d 1149,

1160–61 (9th Cir. 2010), that a section 201(b) claim did not exist because the FCC had not made findings that the conduct in that case between those parties was an unreasonable practice, and that the plaintiff's section 207 claim therefore failed for want of an independent right to compensation.  *See also Hoffman v. Rashid*, 388 F. App'x 121, 123 (3d Cir. 2010) ("[I]t is within the purview of the Federal Communications Commission, not [plaintiff], 'to determine whether a particular practice constitutes a violation for which there is a private right to compensation.'" (quoting *N. Cnty. Commc'ns Corp.*, 594 F.3d at 1158)).  In its decision on the motion to dismiss, this Court did not go as far as the Ninth Circuit, instead stating that the FCC must speak only to a "general practice" in order to establish a violation of section 201(b) before a private action under section 207 could follow.  (Mot. Dismiss Op. 16.)  *Accord Demmick v. Cellco Partnership*, No. 06-2163, 2011 U.S. Dist. LEXIS 34381 (D.N.J. Mar. 29, 2011) (Linares, J.) ("The FCC orders in *Global Crossing* . . . did not determine the reasonableness of the defendant's 'particular practices,' as apparently required under *North County*, but instead announced a more general rulemaking.").

In the present case, plaintiffs have not highlighted a statutory provision or a regulation finding that conduct in violation of 47 C.F.R. §§ 1.946(c), 1.955(a)(2), (3), or 80.49(a)(3) constitutes an "unlawful" act under section 206 in the manner that *Global Crossing* demanded.  Such a determination need not come from FCC adjudication between these parties ― it could come from any FCC source, such as a statement that violation of these regulations would be unjust or unreasonable under section 201(b), or that a violation of these regulations runs afoul another statutory declaration of unlawfulness.  The Court does not consider it dispositive that these regulations call for automatic termination even in the absence of FCC action, because it is still incumbent upon the FCC to declare that failure to abide by the terms of the regulations is the

11

type of conduct that could lead to a claim under section 207. Nor would it matter if plaintiffs' allegations, taken as true, constitute a clear violation of the regulation, because the Court cannot hear a claim for a breach of a regulation for which no private right of action exists.

Plaintiffs argue that "[c]learly these violations are far worse than those held to be unreasonable and unlawful practices in" *Global Crossing*, because here, "the entire service itself is being blocked or hijacked by these Defendants and their ongoing failure to abide by basic FCC Rules, which undermines licensing itself and not just lawful compensation of a service pursuant to a particular license." (Moving Br. 11.) As the precedent makes apparent, however, the determination of whether the conduct is "worse" is simply not one for this Court to decide. If plaintiffs' argument were taken to its natural conclusion, then it would mean that section 207 provides a private right of action whenever a party is harmed by another party's violation of an FCC regulation. The Supreme Court has rejected such an interpretation. *See Global Crossing*, 550 U.S. at 56.

### V.     Conclusion

For the foregoing reasons, plaintiffs' motion for reconsideration is denied. An order will follow.

August 20, 2012

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.