```
 1                       UNITED STATES DISTRICT COURT
                            DISTRICT OF NEW JERSEY
 2

 3   HAVENS, et al.,                     .
                                         .
 4         Plaintiffs,                   .
                                         .
 5   vs.                                 . Case No. 11-cv-00993
                                         .
 6   MOBEX NETWORK SERVICES, LLC         . Newark, New Jersey
     et al.,                             . October 23, 2012
 7                                       .
           Defendants.                   .
 8

 9
                       TRANSCRIPT OF RECORDED OPINION
10                   BY THE HONORABLE PATTY SHWARTZ
                       UNITED STATES MAGISTRATE JUDGE
11

12

13   APPEARANCES:

14    For the Plaintiffs:    No one was present

15
      For the Defendants:    No one was present
16

17

18

19

20

21   Audio Operator:

22   Transcription Service:     KING TRANSCRIPTION SERVICES
                                 901 Route 23 South, Center Ste. 3
23                               Pompton Plains, NJ 07444
                                 (973) 237-6080
24
     Proceedings recorded by electronic sound recording; transcript
25   produced by transcription service.
```

1        (Commencement of proceedings)

2

3        THE COURT: This matter has come before the Court
4   by way of submission dated October 19, 2012, regarding
5   defendant MCLM's request to quash subpoenas served upon
6   Westchester Community College and LIN Television. The Court
7   has considered the submission, record of proceedings, claims,
8   defenses, and governing law, and for the reasons set forth in
9   this Opinion, the request to quash the subpoenas is denied.
10       As the parties are aware, discovery is proceeding
11  in this case, and the Court has resolved various discovery
12  disputes concerning the metes and bounds of proper discovery.
13  The Court also set deadlines within which discovery is to be
14  completed.
15       As part of plaintiffs' efforts to secure discovery,
16  the Court has been advised that the plaintiff used two
17  subpoenas issued out of this Court and served them upon
18  Westchester Community College in Valhalla, New York, and LIN
19  Television Corporation in Providence, Rhode Island. Each of
20  those subpoenas sought similar information; specifically, the
21  subpoenas look for records and files that the recipient of
22  the subpoena obtained from or are related to or in the name
23  of the license and licensee, which is described as Maritime
24  Communication Land Mobile, Maritime Communication MCLM,
25  Mobex LLC, Mobex Communications, Waterway Communications,

1  Regionet Wireless LLC, Fred Daniel or Orion Telecom, as well
2  as Paging Systems Inc., Paging Systems, Touch Tel Corp.,
3  Touch Tel Corp. [*sic*], Touch Tel, Susan Cooper, Robert
4  Cooper, Bob Cooper, David Kling, and Scott Adler.  The
5  subpoena also calls for the production of written
6  communications between the site owner, which is described as
7  either Westchester Community College in the subpoena directed
8  to Westchester, or LIN Television in the case of the subpoena
9  directed to LIN Television, and the licensees, including but
10 not limited to any of the operations of the AMTS system,
11 which is described as stations operating under an AMTS
12 license issued by the FCC.  The subpoenas also call for the
13 production of copies of leases, contracts, sales or other
14 agreements between the site owner and a licensee that concern
15 the operation of the AMTS station from site, which is the
16 facility owned by the site owner, including any antenna or
17 buildings in which equipment is installed.  Finally, each
18 subpoena calls for records that demonstrate that an AMTS
19 system was operating at the site under the terms of a license
20 at any time from January 1, 1999, to the present.  Notably,
21 these subpoenas also look for the production of "information"
22 arguably in the form of interrogatory-type inquiries.
23 Neither subpoena calls for a deposition, but rather asks for
24 the production of documents.  See Attachments A and B to the
25 Joint Letter dated October 19, 2012.

1      Defendants have objected to the subpoenas and state
2 that they should each be quashed pursuant to Fed. R. Civ. P.
3 45(c)(3) or that the documents produced pursuant to the
4 subpoena should be marked "confidential, attorneys' eyes
5 only," pursuant to the discovery confidentiality order and
6 require that any that have been turned over to plaintiff be
7 returned to plaintiffs' counsel.
8      Defendant MCLM asserts that the subpoenas do not
9 seek relevant information.  With respect to the subpoena
10 served on Westchester Community College, counsel for MCLM
11 represented he advised plaintiff of his view that the
12 subpoena was irrelevant, not likely to lead to the discovery
13 of admissible evidence, harassing, and interfered with MCLM's
14 current contractual relationships and designed to obtain
15 discovery for use in the FCC action, which plaintiff would
16 not be able to secure if requested through that proceeding.
17      As it relates to LIN Television, defendant
18 represents that it advised plaintiff that the subpoena was
19 defective and asserted the same arguments that it was not
20 reasonably calculated to lead to the discovery of admissible
21 evidence since the site involved the terminated lease that
22 was not co-located and did not otherwise involve the Paging
23 System co-defendant if someone was to sign to obtain
24 information for use in the FCC proceeding.  It is represented
25 at page 3 of the joint submission that the documents called

1   for by the LIN subpoena have already been produced and that
2   these documents have been submitted to the FCC.
3           Plaintiff asserts that the subpoenas seek
4   information within the bounds of Fed. R. Civ. P. 26 as it
5   seeks information concerning whether or not the defendant is
6   using its geographic licenses as contemplated.  Plaintiff
7   represents that both Westchester and LIN agreed to
8   voluntarily accept service of the subpoenas and recognize the
9   jurisdiction of the Court.  See the Joint Letter at 7.
10          Plaintiff asserts that the information sought is
11  relevant and is likely to obtain information more than the
12  two lease agreements that MCLM produced concerning the
13  Westchester County site.
14          Plaintiff notes that such discovery should be
15  pursued to probe what it perceives to be inconsistent
16  positions that MCLM has taken.  At page 8 of the joint
17  submission, plaintiff represents that MCLM has represented to
18  the FCC that it has not operated many of its AMTS stations
19  since the end of 2007, and that it does not have any
20  customers and its stations have been operating on private
21  mobile radio stations since 2003 through 2004, but that such
22  a representation be [*sic*] inconsistent with what its license
23  seems to permit.
24          The Court would not allow discovery if that were
25  simply the only reason why the discovery was being sought.

1  This is not a litigation about the propriety of whether or
2  not MCLM is using certain licenses within the contemplation
3  of the permission of the FCC.  Rather, this is a case about
4  whether or not an antitrust violation has occurred by
5  hoarding licenses, among other means.  Plaintiff asserts that
6  by obtaining information in Westchester, it will obtain
7  information about a station that is actually operational and
8  that is serviced by MCLM.
9           Similarly with respect to the documents produced by
10 LIN Television, those documents have been produced and
11 plaintiff represents that they are the same or similar to
12 those already produced on the CD that plaintiff had submitted
13 to the FCC, including emails between Mobex and LIN personnel,
14 discussing and negotiating lease termination and termination
15 agreements and that such documents were never before marked
16 as confidential and should not now be so marked.  See the
17 Joint Letter at 9.
18          Plaintiff also challenges MCLM's standing to quash
19 the LIN subpoena, based upon MCLM's assertion that it has no
20 business relationship with LIN Television, on the one hand,
21 yet making representations that it has a relationship with it
22 on the other hand.
23          The Court first determines whether or not the
24 subpoenas are proper.  The Court has insufficient information
25 to know whether or not Westchester Community College in

1  Valhalla, New York, would be within the one-hundred mile rule
2  of this court, but it does not have any reason to question
3  that LIN Television in Providence, Rhode Island, is outside
4  the hundred-mile rule.  The use of a New Jersey subpoena to
5  secure information from an entity in Rhode Island for
6  production in the District of New Jersey, if challenged by a
7  party who asserts there is a lack of jurisdiction, would be a
8  successful challenge.  It appears, however, that LIN
9  Television has voluntarily produced the information without a
10 challenge to personal jurisdiction, and under these
11 circumstances, the Court will not quash the subpoena.
12          As it relates to Westchester Community College,
13 there is no assertion in the submission that that entity is
14 outside the one-hundred-mile rule, and therefore, the Court
15 will not conclude that such a subpoena is unenforceable
16 simply because of the location of the party upon whom it was
17 served.  The Court, however, does note that the production in
18 New Jersey may not necessarily comply with the spirit of
19 Rule 45.
20          To ensure there is no further use of subpoenas to
21 secure the production of information from entities outside
22 the hundred-mile rule, the Court will require that any
23 further subpoenas other than Westchester and LIN TV shall be
24 issued by a court with jurisdiction over the person or entity
25 from whom the information is sought in accordance with Fed.

1  R. Civ. P. 45(a)(2) and (b)(2) and (c)(3).  The Court would
2  have the authority to quash a subpoena that requires a person
3  who is neither a party nor a party's officer to travel more
4  than one hundred miles from where the person resides, is
5  employed, or regularly transacts business.  The subpoena face
6  itself of the LIN subpoena would make such a requirement, and
7  quashing would be a remedy.  However, it appears, based upon
8  the representation of the plaintiff, that LIN has not invoked
9  its ability to quash a subpoena under Fed. R. Civ. P.
10 45(c)(3)(A)(ii), and thus, the Court will not quash the
11 subpoena on that ground.  But the Court wants to ensure there
12 is no misuse of the subpoena process, and there is a careful
13 review and compliance with all terms of Rule 45.
14         The next issue the Court wants to discuss is the
15 nature of the subpoenas themselves.  Subpoenas pursuant to
16 Rule 45 allow for two things: production of information,
17 namely documents or things; and testimony.  A subpoena may
18 command the attendance at a deposition, command or permit
19 inspections, or command the production of documents,
20 electronically stored information, or tangible items.
21 Rule 45(a)(1)(B), (C), and (D).
22         These subpoenas also ask for "information," which
23 does not seek testimony, nor does it seek production of a
24 thing.  It is essentially a series of 21 requests for
25 information akin to interrogatories.  The Court is unfamiliar

1  with any authority that would allow such a modality to be
2  used.  It is not a deposition or a written question.  It is a
3  Rule 45 subpoena, and that is not contemplated.
4            Therefore, the request to quash the subpoenas to
5  produce documents is denied, but the request to respond to
6  the section entitled "(III) information to be provided" is
7  granted, as it does not seek the production of documents,
8  things, or deposition testimony.  Therefore, that portion of
9  each of these subpoenas is quashed, and no other subpoenas
10 may include such a request.
11           The next issue is whether or not the documents
12 should be produced.  MCLM attempts to make an argument that
13 because these sites are not co-located with any of the other
14 codefendants, somehow the information sought is not relevant.
15 MCLM's view is far too narrow as to what would be relevant
16 discovery.  In this instance, the plaintiff is contending
17 there is action involving the so-called hoarding of licenses
18 in a means that somehow allegedly blocks plaintiffs from
19 participation in the market.  While the absence of other
20 defendants at the same site in and of itself may undermine
21 the plaintiffs' conspiracy theory, this type of information
22 may lead to the discovery of admissible evidence concerning
23 whether or not MCLM is actually using the licenses in the
24 fashion intended.  Indeed, the information that might be
25 revealed from the Westchester Community College subpoena or

1  what has been reviewed from the LIN subpoena may actually
2  help MCLM's position to argue that there has been no
3  hoarding, but, rather, active use of the licenses.  Of
4  course, the Court is not in a position to know what the
5  evidence will actually show.  But the Court finds that the
6  subject matter about which these subpoenas are directed is
7  relevant.  Indeed, the nature of the documents that are being
8  sought is likely to lead to the discovery of admissible
9  evidence concerning whether there was actually operations at
10 those locations using these licenses with any of the
11 licensees identified in the respective subpoenas.
12          Therefore, the Court overrules the relevancy
13 objection to the subpoenas.
14          With respect to the alternative relief, namely, a
15 request that the responsive documents be marked confidential,
16 the Court is not persuaded that the nature of the
17 communications or documents that are being sought would
18 indeed lead to an injury if disclosed publicly.  First, it
19 does not appear that any of the -- either of the entities to
20 whom the subpoenas are directed have protested production or
21 expressed a concern that production would somehow compromise
22 their proprietary interests.  Second, the Court is not
23 persuaded that information concerning the operation of the
24 AMTS systems at the site or licenses pursuant to which they
25 were operating would somehow compromise the proprietary

1   interests of MCLM.  The licenses are public.  The leases,
2   contracts, and sales and agreements between the site owner,
3   whether it is Westchester Community College or LIN
4   Television, and the licensee have not been demonstrated to be
5   the type of information that, if disclosed, would lead to
6   competitive disadvantage.  The site owners have expressed no
7   concern, and the licensees have not provided sufficient
8   information from which the Court could conclude that their
9   proprietary interests are at stake if the information were
10  not kept confidential.
11          The real concern is that plaintiffs may be
12  attempting to use the subpoena power of this Court to secure
13  information for use in the FCC proceedings.  That is a
14  legitimate concern.  The Court is greatly concerned that some
15  of the evidence that might be secured here, would be used in
16  a proceeding for which it was not intended.  The plaintiffs'
17  own portion of the submission is very telling in this regard.
18  It seeks to essentially bring out inconsistencies in
19  positions that MCLM may have taken before the FCC.  For
20  example, on page 8 of the joint submission, the plaintiff is
21  very blunt in seeking to obtain information about conflicting
22  statements and positions that MCLM may have taken concerning
23  private mobile radio stations versus its AMTS licenses before
24  the FCC.
25          This Court's process is not to be used to gain an

1  advantage in another proceeding.  The FCC proceedings have
2  their own rules and regulations, and the Court will enter an
3  order that clearly states that document testimony produced
4  pursuant to the subpoenas served on non-parties shall be used
5  for the purposes of this litigation only.  As just stated,
6  the Court will not allow the process of this Court to be used
7  to gain an advantage in a different proceeding.  This is an
8  antitrust case.  Judge Hayden has dismissed the FCC-based
9  claims.  The plaintiff has its remedies in the FCC forum and
10 is duty-bound to follow them and not to do an end run around
11 them.
12          Moreover, and equally important, is the fact that
13 these non-parties should only be burdened to the extent
14 necessary to advance or defend claims that are pending in
15 this litigation, not to be used as fountains of information
16 that may or may not be relevant to the FCC proceedings
17 outside of what the FCC would permit.  Therefore, the Court
18 finds that there is a strong reason to limit documents and
19 testimony produced pursuant to the subpoenas served on
20 non-parties to be used only for the purposes of this
21 litigation.
22          For all of these reasons, MCLM's request to quash
23 the subpoenas to produce documents served upon Westchester
24 Community College and LIN Television is denied, but the
25 request that these entities respond to the section entitled

1  "(III) information to be provided" is granted, as it does not
2  seek the production of documents, things or deposition
3  testimony.
4           And no other subpoenas may include such a request.
5  The documents produced pursuant to the subpoenas served upon
6  these non-parties shall be used for the purposes of this
7  litigation only.
8           A form of Order consistent with this Opinion will
9  be issued.
10                  (Conclusion of proceedings)

```
 1                        Certification
 2         I, SARA L. KERN, Transcriptionist, do hereby certify
 3    that the 14 pages contained herein constitute a full, true,
 4    and accurate transcript from the official electronic
 5    recording of the proceedings had in the above-entitled
 6    matter; that research was performed on the spelling of proper
 7    names and utilizing the information provided, but that in
 8    many cases the spellings were educated guesses; that the
 9    transcript was prepared by me or under my direction and was
10    done to the best of my skill and ability.
11          I further certify that I am in no way related to any of
12    the parties hereto nor am I in any way interested in the
13    outcome hereof.
14
15
16
17
18     s/ Sara L. Kern                          November 8, 2012
19     Signature of Approved Transcriber             Date
20
21
       Sara L. Kern, CET**D-338
22     King Transcription Services
       901 Route 23 South, Center Suite 3
23     Pompton Plains, NJ 07444
       (973) 237-6080
24
25
```