**EXHIBIT 13**



**manatt**

manatt | phelps | phillips

**Kenneth D. Friedman**
Manatt, Phelps & Phillips, LLP
Direct Dial:  (212) 830-7184
Direct Fax:  (212) 830-3012
E-mail:  kfriedman@manatt.com

April 12, 2013                                          Client-Matter:  40480-061

**VIA ECF**

The Honorable Cathy L. Waldor, U.S.M.J.
United States District Court, District of New Jersey
U.S. Post Office & Courthouse
Federal Square, P.O. Box 999
Newark, New Jersey 07101-0999

> **Re:   Havens, et al. v. Mobex Network Services, LLC, et al.**
> **Civil Action No. 2:11-cv-993 (KSH) (CLW)**

Dear Magistrate Waldor:

My firm represents defendants Paging Systems, Inc. and Touch Tel Corp. (hereafter, collectively, "PSI-TT") in the above-referenced action.

On behalf of PSI-TT and Plaintiffs, we write to inform you that PSI-TT and Plaintiffs have entered into a global confidential settlement agreement ("Confidential Settlement Agreement" or "CSA"), which, when fully completed, would resolve those parties' claims as between them in this action pending before this Court, as well as all claims as between them pending before the Federal Communications Commission ("FCC"). Pursuant to the standing Order of Magistrate Shwartz, we had submitted this letter to Robert Mauriello, counsel for defendant Maritime Communications / Land Mobile, Inc. on Tuesday, April 9, 2013 following a "meet and confer" telephone conference call with all counsel of record. Our expectation was that Mr. Mauriello, who as discussed below, indicated that he would object to the relief sought by the remaining parties in this litigation, would provide us with an insert within twenty-four hours of his receipt of this joint letter so that we could timely file for relief with the Court. Unfortunately, after a number of additional requests that he do so, Mr. Mauriello did not provide an insert stating his client's position on the issue within that time frame. Therefore, we are now filing this letter in accordance with Your Honor's Standing Order, and expect Mr. Mauriello to file his response within two days.

Completion of the Confidential Settlement Agreement is conditioned upon prior FCC approval of, and the FCC's explicit agreement to a number of licensing actions to be submitted under the CSA to the FCC (details of which the parties can provide to the Court upon the Court's request). Accordingly, PSI-TT and Plaintiffs cannot yet file a stipulation of dismissal under Federal Rule 41 until such time as the FCC approval is obtained. These FCC licensing actions sought under the CSA are pursuant to well established regulation and procedures. Based on the

7 Times Square, New York, New York  10036  Telephone: 212.790.4500  Fax: 212.790.4545

Albany  |  Los Angeles  |  New York  |  Orange County  |  Palo Alto  |  Sacramento  |  San Francisco  |  Washington, D.C.

# manatt

manatt | phelps | phillips

Honorable Cathy L. Waldor, U.S.M.J.
April 12, 2013
Page 2

CSA parties' prior experience before the FCC, as well as current communications with FCC representatives, the parties estimate that the FCC is likely to give its consent to CSA licensing actions (and attendant resolution of separate conflicts before the FCC), but no sooner than six (6) weeks hence.

Consequently, Plaintiffs and PSI-TT respectfully seek from this Court a Stay of All Proceedings in this action pending FCC approval of the terms of the CSA (a copy of which can be provided *in camera* or under seal at the Court's request), so that the parties' settlement can be fully completed and all parties remain in appropriate equipoise in the interim.

Defendant Maritime Communications / Land Mobile Inc.'s ("MCLM's") objections to this requested stay are unfounded and materially outweighed by the multiple reasons why this Court should grant the requested relief and to allow the FCC applications, approvals and resolutions noted above to occur. Simply put, granting the requested stay will preclude any potential need for parallel proceedings, will assure that Plaintiffs are not prejudiced in connection with their antitrust claims as between and among the defendants, as well as with respect to pending, potential discovery issues in dispute, and will promote judicial economy and efficiency. Moreover, an immediate stay would ensure that, in the unlikely event that the FCC does not grant approvals and resolutions that are necessary to complete the Settlement among the Plaintiffs and PSI-TT, this litigation would not proceed on separate tracks against different co-defendants, with all the attendant impracticalities that would be created (including different dispositive motion dates, deadlines for exchanging exhibits, and final pretrial order materials, etc.).

Such significant prejudice to the Plaintiffs, PSI-TT and the Court itself are obvious should the requested stay not be granted, whereas MCLM would not be prejudiced in any meaningful way, if at all (*e.g.*, it would actually have more time to prepare defenses or to discuss settlement if MCLM should so choose). All the parties and the Court would require of MCLM is for it to do nothing pending the FCC's decision on the requested approvals. This stay would not impact MCLM's legal or equitable positions, would not bolster Plaintiffs' claims against that defendant, or otherwise change the landscape of this litigation. Indeed, in the unlikely event that the FCC does not approve the Plaintiffs' and PSI-TT's proposed resolution, the Settlement Agreement would become invalid, and a stay would ensure that all parties (Plaintiffs, PSI-TT and MCLM) would proceed on an equal footing to trial in this action. Such equal footing would be unilaterally destroyed should the FCC not grant the requested approvals in the absence of a universal stay. Again, the prejudice to the Plaintiffs, PSI-TT, and this Court under that scenario is clear. We anticipate that MCLM will argue that the Court should simply dismiss the Action as against PSI-TT without prejudice, subject to refiling should the FCC fail to grant the sought after approvals and resolutions. In short, such a resolution does not properly and efficiently address the issues set forth above that would befall *all* of the parties to this litigation should the

# manatt

manatt | phelps | phillips

Honorable Cathy L. Waldor, U.S.M.J.
April 12, 2013
Page 3

settlement fail for lack of FCC consents and this litigation proceed with all parties for reasons described herein. Indeed, the only equitable and efficient way to proceed for all involved would be to stay the entire matter pending full implementation of the CSA by way of FCC approvals and resolutions and then the filing of a stipulation of dismissal with prejudice as between the Plaintiffs and PSI-TT.

As noted above, Plaintiffs and PSI-TT had intended to seek this relief via a joint letter earlier this week in light of upcoming litigation deadlines. Pursuant to Magistrate Shwartz's earlier Order (Document No. 160), the deposition of Mrs. Cooper, the President and CEO of PSI, must be completed no later than this Friday, April 12, 2013. If the parties' settlement is completed, however, that deposition would not need to be taken. Accordingly, if the Court will so order, Plaintiffs and PSI-TT agree that Mrs. Cooper's deposition may be stayed pending the Court's dismissal of the claims as between them and, in the event of such dismissal, that Mrs. Cooper's deposition need not be taken. Counsel for MCLM represented during the meet and confer that it did not oppose extending the April 12 deadline for that deposition. A stay of all proceedings also will obviate the Plaintiffs' intention to bring to the Court's attention certain other discovery (document production) disputes with PSI-TT, resolution of which also is likely to be unnecessary following the Court's dismissal of the claims as between them. [1] Plaintiffs, however, reserve their rights to bring to the Court's attention for resolution in the future disputes regarding PSI-TT's alleged non-production of documents to the extent such documents may bear upon Plaintiffs' claims against the defendants remaining in this action following the Court's dismissal of the claims as between plaintiffs and PSI-TT.

In addition, PSI-TT in particular would suffer significant prejudice if an immediate stay were not to issue. Among other things, the Eleventh Amended Pretrial Scheduling Order (Doc. No. 163) reflects a number of upcoming Court deadlines, such as exchanging proposed trial exhibits, preparing a Joint Pretrial Order, and preparing for the Final Pretrial Conference. The substantial effort and expense to PSI-TT associated with meeting those deadlines would become obviated if and when (as anticipated) the settlement is completed.[2] However, should the FCC not grant the approvals sought in connection with the provisions of the CSA and this matter is not stayed as to all parties, then PSI-TT would somehow have to re-align itself with the trial exhibits that would by then have been exchanged between Plaintiffs and MCLM, re-open the Final Pre Trial Order, and, among other things, seek leave to file a separate motion for summary

---

[1] PSI-TT do not accede that there is a meritorious document discovery dispute, but identify it as a potential issue that could be presented to the Court by Plaintiffs in the future.

[2] PSI-TT note that there was a litigation stay in effect in the predecessor case, which lasted more than a year. *See, e.g.,* Case 2:08-cv-03094-KSH-PS Doc. No. 44 (filed Oct. 15, 2009)

# manatt
manatt | phelps | phillips

Honorable Cathy L. Waldor, U.S.M.J.
April 12, 2013
Page 4

judgment. In essence, this would result in a piecemeal, two-tracked litigation that would be untenable not only for all parties but for the Court as well.

Accordingly, Plaintiffs and PSI-TT respectfully request that this Court:

(1) immediately stay all proceedings in this action, including but not limited to any pending discovery and depositions, until thirty (30) days following the Court's dismissal of the claims as between Plaintiffs and defendants Paging Systems, Inc. and Touch Tel Corporation;

(2) order that plaintiffs and Paging Systems, Inc. and Touch Tel Corporation file with this Court a copy of any resolution of the matters between them pending before the Federal Communications Commission within ten (10) days of the issuance of such FCC order and, in the absence thereof, file with this Court a Status Report no later than six (6) weeks hence; and,

(3) order that plaintiffs and defendant MCLM shall meet and confer within ten (10) days of this Court's dismissal of the claims as between Plaintiffs and defendants Paging Systems, Inc. and Touch Tel Corporation, and jointly submit to this Court within thirty (30) days of such dismissal a proposed schedule for re-commencement of the pending action.

Counsel for PSI-TT and the Plaintiffs respectfully request the opportunity to present to the Court via telephone conference or in Court, both their positions and any response they might have to the expected opposition of MCLM, which is expected to be filed within two days of the filing of this letter as per Your Honor's Standing Order.

Respectfully submitted,


 /s/ Kenneth D. Friedman
Kenneth D. Friedman

KDF:sbs
cc:      All Counsel of Record (via ECF)


307831676.1


307856104.1

# WINNE, BANTA, HETHERINGTON,
# BASRALIAN &
# KAHN, P.C. COUNSELLORS AT LAW

COURT PLAZA SOUTH – EAST WING
21 MAIN STREET, SUITE 101
P.O. BOX 647
HACKENSACK, NJ 07601-0647
(201) 487-3800
FACSIMILE (201) 487-8529
(201) 525-9460

www.winnebanta.com

NEW YORK OFFICE
900 THIRD AVENUE, 17TH FLOOR
NEW YORK, NEW YORK 10022
(212) 644-1710

WASHINGTON, D.C. OFFICE
1730 M STREET, SUITE 200
WASHINGTON, D.C. 20036-4530
(202) 296-5113

FLORIDA OFFICE
2255 GLADES ROAD, SUITE 324 ATRIUM
BOCA RATON, FLORIDA 33498
(561)482-0680

JOSEPH L. BASRALIAN +
ROBERT M. JACOBS
GARY S. REDISH +
RICHARD R. KAHN +
KENNETH K. LEHN ƒ
ROBERT J. KLEEBLATT
RONALD M. ABRAMSON
MARTIN J. DEVER, JR. + *
THOMAS J. CANGIALOSI, JR. +
CAROLYN GERACI FROME
BRUCE R. ROSENBERG
SCOTT K. McCLAIN ρ
EDWARD P. D'ALESSIO + x
RICHARD D. WOLLOCH +
MICHAEL G. STINGONE ρ

SHARON REIDER BABB +
CHRISTINE R. SMITH
R.N. TENDAI RICHARDS
IAN S. KLEEBLATT
THOMAS R. McCONNELL
ROMAN VACCARI ρ +
LORI A. JOHNSON
MICHAEL J. COHEN +
MELISSA A. TERRANOVA +
JOSEPH M. VIGLIOTTI
JASON L. LIBOU +

PETER G. BANTA +
GERALD GOLDMAN +
JEFFREY L. LOVE +
MARK E. LICHTBLAU +
ALICE B. NEWMAN + ■
FRANK J. FRANZINO, JR. +
COUNSEL TO THE FIRM

ROBERT A. HETHERINGTON III (RET)
ARTHUR J. SIMPSON, JR. + Δ (RET)
MATTHEW COHEN + (RET)
WALTER G. WINNE (1889-1972)
HORACE F. BANTA (1895-1985)
BRUCE F. BANTA (1932-1983)

ƒ CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY
+ MEMBER NEW YORK BAR ALSO
* MEMBER CONNECTICUT BAR ALSO
ρ MEMBER PENNSYLVANIA BAR ALSO
x MEMBER WASHINGTON, D.C. BAR ALSO
Δ CPA (NJ)
■ MEMBER FLORIDA BAR ALSO

Email address:  trichards@winnebanta.com
Direct Dial:     (201) 562-1099

**Via ECF**

The Honorable Cathy L. Waldor, U.S.M.J.
United States District Court, District of New Jersey
Frank R, Lautenberg U.S.P.O. & Courthouse Building
P.O. Box 999
Newark New Jersey 07101

Re:  Skybridge Spectrum Foundation, et al. v. Mobex Network Services, LLC, et al.
      Civil Action no. 11-cv-00993 (KSH)(PS)

Dear Judge Waldor

    With this letter, Plaintiffs and Defendants Paging Systems, Inc. (PSI) and TouchTel Corporation (TT) (collectively, PSI-TT), respectfully seek leave of this Court to submit their below Reply to address new issues raised in the April 15, 2013 letter of Defendant MCLM opposing Plaintiffs' and PSI-TT's joint request for a stay of all proceedings herein (Doc. #165). Absent this Reply, the Court will not have the opportunity to consider the following facts.

1.    **PLAINTIFFS AND DEFENDANTS PAGING SYSTEMS AND TOUCHTEL** *JOINTLY* **SEEK THIS COURT'S STAY OFF ALL PROCEEDINGS**

    Contrary to the repeated remonstrations of MCLM's counsel, the joint request for a stay of all pleadings is, indeed, *joint*, and not solely of Plaintiffs' doing; in its letter opposing the stay, MCLM mischaracterizes the Plaintiffs and PSI-TT's request as that solely of Plaintiffs. Plaintiffs and Defendants Paging Systems, Inc., (PSI) and Touch Tel Corporation (TT) have executed a Settlement Agreement that will resolve all disputes as between them in the action before this Court, as soon as the FCC consents to their joint proposals for resolution of all licensing claims and disputes as between them pending before the FCC. Already the FCC has taken the first step in this direction by issuing a stay of all proceedings in matters

191807_1

*Serving Our Clients Since 1922*

WINNE, BANTA, HETHERINGTON,
BASRALIAN &
KAHN, P.C. COUNSELLORS AT LAW

pending before the FCC that involve the claims and disputes of Plaintiffs and PSI-TT so as to allow for their efficient substantive actions before the FCC to achieve resolution with FCC approval by final order.[a]  As Plaintiffs, PSI and TT together noted in their initial joint request, this Court's grant of a stay of all proceedings pending the FCC's approval of the resolutions proposed by the parties before it and the subsequent dismissal of PSI and TT from this action, will serve the mutual interests of this Court as well as all parties to this action – even MCLM – as such stay will promote judicial economy and will avoid unnecessary expense and waste of the parties' resources on matters that will be obviated by PSI's and TT's expected dismissal, and will maintain alignment of the proceedings in this action as to all defendants (in the event the FCC does not grant its consent) and thus avoid potentially expensive and unnecessarily complicated two-track litigation in the unlikely event all parties resume this litigation.  Moreover, contrary to MCLM's unfounded and inaccurate allegations, MCLM will not be prejudiced by the requested stay of all proceedings.

## 2. PLAINTIFFS'/SKYTEL'S STATUS AS AN UNSECURED CREDITOR IN THE MISSISSIPPI BANKRUPTCY MATTER DOES NOT HINGE ON THIS N.J. FEDERAL COURT ACTION

Contrary to MCLM's misrepresentation to this Court -- namely, that if Defendant MCLM were to prevail on summary judgment in this action, Plaintiffs would lose their participant status in the Mississippi bankruptcy matter -- the Plaintiffs' participation rights and status as a creditor in the pending Mississippi bankruptcy matter are *not* limited to their status as plaintiffs in this New Jersey Federal District Court action. Indeed, as counsel for MCLM well knows, Plaintiffs'/SkyTel's (Plaintiffs are known collectively as "SkyTel" in the bankruptcy proceeding) participation rights and status in the Mississippi bankruptcy matter is rooted *both* in the Plaintiffs' damage claims in this New Jersey federal court action giving rise to an unsecured creditor claim in MCLM's bankruptcy, *as well as* SkyTel's claims pending before the FCC, challenging MCLM, including MCLM's right to own or hold, and asserting SkyTel's rights to own and hold, the FCC licenses for AMTS radio spectrum that comprise the core of debtor MCLM's assets, disposition of which is the principal subject of the bankruptcy court proceedings.  Thus, even if, as MCLM's counsel suggests, MCLM is "disparaged" by virtue of SkyTel's participation in the MCLM bankruptcy proceeding (which SkyTel fully denies),[b] it is not exclusively by dint of SkyTel's and the other Plaintiffs' participation in this New Jersey federal action.

Astonishingly, in the very Order of the Mississippi federal bankruptcy court cited by MCLM for its erroneous argument to this Court and attached as Exhibit A to MCLM's recent submission (Doc. #165-1), the Mississippi Bankruptcy Court "ORDERED, ADJUDGED AND DECREED," that the bankruptcy court was not adjudicating whether Debtor MCLM owns or has a right to hold the FCC Spectrum or any FCC licenses – which Spectrum and licenses comprise the core of the debtor's assets – and, further, that the bankruptcy court "expressly recognized that . . . (d) SkyTel preserves and maintains its right to continue to assert its claims, defenses, rights and positions in and in connection with the FCC licenses before *both* the FCC *and* the New

---

[a]  As with the executed Settlement Agreement among Plaintiffs, PSI and TT, the documentation reflecting this FCC stay is comprised of confidential communications with the FCC, and can be provided to the Court upon request.  The FCC granted a stay through July 16, 2013.

[b]  SkyTel's position as to MCLM before the FCC, carried into the MCLM bankruptcy action, is for the most part aligned with the position of the FCC, as shown in the FCC and bankruptcy court actions.  This is reflected, for example, in the FCC Order that commenced the pending formal license-revocation hearing of the MCLM licenses, the Hearing Designation Order, FCC 11-64 (the "HDO"), a copy of which is available in the Federal Register online at: http://www.gpo.gov/fdsys/pkg/FR-2011-05-24/html/2011-12792.htm.  This FCC HDO describes the SkyTel companies as the "petitioners" whose petitions gave rise to and informed this HDO, and lists them at the end as parties to the formal FCC Hearing.

WINNE, BANTA, HETHERINGTON,
BASRALIAN & ————————————————————
KAHN, P.C.  COUNSELLORS AT LAW

Jersey District Court, including those claims, defenses, rights and positions which are the subject of and/or are related to the FCC proceedings *and* the New Jersey District Court Litigation discussed in SkyTel's Objection to Confirmation of the Plan [DK #806]." *See* Exh. A to MCLM's Apr. 15, 2013 letter to the Court (Doc. #165-1) at pp. 11-12 (italics added).

Thus, as the bankruptcy court made clear, and as MCLM as the debtor therein must well know, SkyTel's status in the bankruptcy matter relies not only on its claims in this New Jersey federal action, but also, and independently, on its claims pending before the FCC against MCLM, including MCLM's putative right to own or hold certain FCC licenses versus SkyTel's asserted rights thereto.  In short, it is clearly a misrepresentation that Plaintiffs – as well as PSI-TT – seek the requested stay as a means by which Plaintiffs may continue to participate in the Mississippi bankruptcy matter.[c]

Plaintiffs, Paging Systems, Inc., and Touch Tel Corporation respectfully request an opportunity to address this Court on their request for a stay of all proceedings.

Respectfully submitted

/s R. N. Tendai Richards
R. N. Tendai Richards

Cc:    Counsel of record via ECF

---

[c]  Plaintiffs do not address herein their discovery disputes with MCLM, existence of which MCLM denies in its letter (Doc. #165 at p. 5); suffice it to say here, that Plaintiffs strongly disagree that MCLM has complied with its discovery obligations in this action and Plaintiffs reserve the right to address their concerns in this regard at a later time.

191807_1

**EXHIBIT 14**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WARREN HAVENS, et al.

               Plaintiffs,

    v.

MOBEX NETWORK SERVICES, LLC, et al.,

               Defendants.

Civ. Action No. 11-993 (KSH)

**ORDER ON INFORMAL
APPLICATION**

This matter having come before the Court on a joint request, submitted by plaintiffs and defendants Paging Systems, Inc. and TouchTel Corporation, to stay the case [D.E. 164, 166]; the Court having considered the written submissions of the parties, including defendant Maritime Communications/Land Mobile, LLC's opposition to the joint request for a stay [D.E. 165]; and good cause appearing,

    **IT IS** on this 19th day of April 2013,

    **ORDERED** that the joint request to stay the case is **denied**; and it is further

    **ORDERED** that all deadlines remain in full force and effect.

                                  /s/ Katharine S. Hayden
                                  Katharine S. Hayden, U.S.D.J.

**EXHIBIT 15**



**manatt**

manatt | phelps | phillips

Eugene L. Hahm
Manatt, Phelps & Phillips, LLP
Direct Dial: (650) 812-1377
E-mail: ehahm@manatt.com

October 24, 2013

40480.062

**BY EMAIL & REGULAR MAIL**

R.N. Tendai Richards, Esq.
Winnie, Banta, Hetherington, Basralian & Kahn, P.C.
Court Plaza South – East Wing
21 Main Street, Suite 101
P.O. Box 647
Hackensack, New Jersey 07601-0647

Re:     *Havens, et al. v. Mobex Network Services., LLC, et al.,*
         **Case No. 11-cv-993 (KSH) (PS)**

Dear Tendai:

We are writing with respect to the parties' Confidential Settlement Agreement and
Mutual Release, effective April 8, 2013. This letter is to inform Plaintiffs that, with respect to
documents regarding MCLM and the two Mobex entities, defendants Paging Systems, Inc. and
Touch Tel Corporation have performed their obligations under Paragraph 12 and found no
additional documents to produce.

Sincerely,

Eugene L. Hahm

ELH:pdm

310804996.1

1841 Page Mill Road, Suite 200, Palo Alto, California 94304  Telephone: 650.812.1300 Fax: 650.213.0260

Albany | Los Angeles | New York | Orange County | Palo Alto | Sacramento | San Francisco | Washington, D.C.

**EXHIBIT 16**

27 November 2013

To:     Robert Cooper, for
        Paging Systems, Inc. and Touch Tel Corporation
Fax:    650-347-5619

From:   Warren Havens, for
        Skybridge Spectrum Foundation
        Verde Systems LLC
        Environmentel LLC
        Telesaurus Holdings GB LLC, &
        Intelligent Transportation & Monitoring Wireless LLC (the "SkyTel" entities)

Total pages: 5

        See letter that follows.

**CONFIDENTIAL**[1]

27 November 2013

To:    Robert Cooper, for
         Paging Systems, Inc. and Touch Tel Corporation
Fax:   650-347-5619

From: Warren Havens, for
       Skybridge Spectrum Foundation
       Verde Systems LLC
       Environmentel LLC
       Telesaurus Holdings GB LLC
       Intelligent Transportation & Monitoring Wireless LLC (the "SkyTel" entities)

Mr. Cooper,

      Our last discussion on the phone included my discussion of ¶6 and ¶12 in the Settlement Agreement ("SA").[2] In the SA, ¶12, Paging Systems, Inc. ("PSI") and Touch Tel Corporation ("TT") agreed to use best efforts to provide to my side "all documents in their possession or control…" regarding "MCLM and the two Mobex entities." In this regard, I am quite sure that both "possession or control" includes documents your attorney has (Audrey Rasmussen, David Hill, etc.) and any other person that assisted PSI and TT, and that "MCLM and the two Mobex

---

[1]  As you know, the Settlement Agreement has language saying it is confidential.  However, the parties agreed to file a redacted copy with the FCC.  The matters in this fax that relate to redacted language are confidential.

[2]  *From page 4 of 38 of Settlement Agreement:*

      6. <u>Dismissals of Court Case and FCC Proceedings.</u>

      "a.  <u>Court Case</u>.  …..Prior to said dismissal, the Parties recognize that they have, and will adhere to, continuing obligations in the Case subject to a stay of said obligations to the extent that a stay is obtained as indicated in Paragraph 12 below."

*From page 6 of 38 of Settlement Agreement:*

      "12. <u>Stay.</u>
      ….
      Notwithstanding grant by the Court of the Stay Request as between the Parties, and as an exception thereto, PSI and TT will have remaining the obligation to use best efforts to timely provide to Plaintiffs all documents in their possession or control responsive to Plaintiffs outstanding request for documents in the Case as to MCLM and the two Mobex entities, which obligation shall be completed no later than the date of the Consummations."

entities" includes not only those companies and their employees, but also their attorneys, other assistants and predecessors involved in the AMTS matters in the court case, including, but not limited to, Fred Daniel, Paul Van der Hayden, Regionet, National Rural Telecommunications Cooperative ("NRTC"), AMTS-station equipment and site providers, engineering consultants, etc.

These would include any communications between legal counsel for PSI and/or TT, on the one hand, and, on the other hand, legal counsel or personnel of the above noted other parties: those communications are not subject to attorney-client privilege. Said privilege only applies to communications between the client and its attorney.

I believe that documents that PSI and TT should have in their "possession or control responsive to Plaintiffs outstanding request for documents…", summarily discussed above, include, but are not limited to, documents that would fall into or are indicated by the following categories.

<u>Categories</u>

1. <u>Court Records</u>: certain court records indicate that there were communications between PSI and TT, on the one hand, and Mobex and its representatives, on the other hand.

   For example,
   (i) You indicated in your deposition in the New Jersey case that you had met with representatives of Mobex, including John Reardon, who sought to purchase PSI's AMTS licenses.
   (ii) *Greene v. Mobex* court case documents indicate communications between Mobex employees, including John Reardon, with you, Robert Cooper, regarding purchase of PSI's AMTS licenses. Mobex employees say there was a letter of intent and terms worked out.
   (iii) You indicated in your deposition in the New Jersey case that you had communications with Fred Daniel regarding applying for AMTS stations.

2. <u>Site Leases</u>: Many of the Mobex and Regionet site leases list all of the AMTS frequencies on them, including those that were held by PSI.

   For example,

   (i) the Mobex lease for the WVEC Television site in Suffolk, VA says that Mobex will share TT's antenna at the site.
   (ii) In proceedings involving WQA216, PSI claimed to the FCC that it had been operating a fill-in station at Exchange Place since the World Trade Center was destroyed. PSI's Exchange Place fill-in was at the exact same coordinates and antenna height as Mobex's Exchange Place station per Mobex's Exchange Place site lease, and Mobex's site lease listed all of PSI's frequencies.
   (iii) The TT lease with Fisher Broadcasting for a site at Coos Bay, OR listed the AMTS frequencies of Regionet (which later became those of Mobex and then MCLM).

3

3.  <u>Filings with the FCC</u>

For example,

(i)     Mobex and PSI made filings with the FCC in which they both supported one
another, including: (1) a stay of Auction No. 57 for potential bidders to appraise
themselves of the level of encumbrance and that PSI and Mobex had stations
nationwide, (2) increased interference protection for incumbent licensees, and (3)
PSI's petition for reconsideration of the FCC's denial of Mobex's petition of the
Auction No. 57 Public Notice, including requesting a stay of the auction, (4) PSI's
and MCLM's petitions of Auction No. 61 Public Notice and also of
Environmentel's and Intelligent Transportation's Form 601 applications, (5) PSI
and Mobex, Regionet or MCLM oppositions to SkyTel challenges in which they
would support one another, including in opposition to petitions to deny station
applications, declaratory ruling requests, informal requests for FCC action, etc.

(ii)    In PSI's comments in FCC, PR Docket 92-257, to allow PMRS for AMTS,
PSI said it supported Mobex's comments, even though at the time of said PSI
comments the Mobex comments had not yet been publicly filed in the docket.

(iii)   Station activation notices filed with the FCC by PSI and Regionet and Mobex
contained similar language, e.g., "on or about" a certain date "to begin tests to
commence service".

4.  <u>Co-located stations</u>

For example,

(i)     There were numerous sites at which MCLM and PSI both co-located AMTS
stations per ULS records and licensing applications, including with the same
antenna height and coordinates listed on the licenses.

(ii)    Both PSI and Regionet sought an extension of time to construct stations in the
Great Lakes area, in part based upon PSI and Regionet co-locating stations to
save costs.


I request that you authorize us to speak with Mr. Hill about these matters, so that what we
are looking for is clear.  While Mr. Hill was not as involved as much as Ms. Rasmussen (at least
as an attorney for PSI whose name was on many filings), we have been discussing with Mr. Hill
tasks to complete the settlement, as you know.

We appreciate your cooperation thus far and have been happy to provide the same to you,
including your last request to have some additional time to finish equipment removal.  The
documents we request above are in no way to challenge the SA, but are to complete it, and will
not create any liability for PSI and TT because the SA contains full releases.  If your attorneys
have any concern regarding responsive documents and want to exchange those in a type of
"closing" arrangement that would include my side's delivery of a the documents to put into
effect a dismissal with prejudice of the court as to PSI and TT, I would be happy to look into

that.  For example, one arrangement may be the following:  that the responsive documents be shown to an attorney we choose on attorney-eyes-only basis as to the substance of the documents, where said attorney for us can generally describe the identification and nature of the documents, but where we receive the documents as part of that closing exchange (and after that closing, there is no longer any attorney-eyes-only restriction).


Sincerely,


Warren Havens, President


Cc: David Hill, by email

5

**EXHIBIT 17**

**Friedman, Kenneth**

---

**From:** eitt líf. koma nú. griðastaðir [warren.havens@sbcglobal.net]
**Sent:** Sunday, December 22, 2013 4:01 AM
**To:** David Hill
**Cc:** Jimmy Stobaugh
**Subject:** Re: Settlement Agreement/closing

Jimmy,

Please follow up- a business day and time soon for a telecon with Mr. Hill.
Also, check (or have staff check) the FCC Dec 6 letter against our §1.935 pleadings dismissal request's Exhibit 1.
Also check when this was postmarked and when you received it at the office.  It seems to have been mailed late for some reason.

Mr. Hill,

Jimmy Stobaugh and I may have miscommunicated as to your email below.  On Dec 18, I had asked Jimmy to review certain matters then send you a response.   But, in working to catch up on matters, I don't see an email from him to you (cc to me) on this.

We would appreciate receipt of the  documents requested, under the settlement agreement (SA) as described in our letter to Mr. Cooper dated 11-27-13 (Jimmy sent you a copy by email on same day), which was cc'ed to you, as soon as possible - they are for purposes of the live court case (as the SA notes), or alternatively, as the letter notes, we can make an arrangement to receive those at the time of the dismissal of the court case.  Not timely obtaining these is a problem for our side.

As to the FCC Dec 6 letter, in review of it -
- Rule 1.935 says that the requests are to the Commission.
- The PSI and TT requests under this rule were addressed to the WB Chief.  I followed with my side's request using the same addressee.
- The Dec 3 letter was by three persons in WB, none of which are the Chief, and cites 0.331 as authority,* but I am not sure this rule allows anyone in WB (even the Chief) to act on a pleading before the full Commission.  The parties exhibit listing pleadings to be dismissed includes Apps for Rev before full Commission on both sides.

I have just considered this possible issue.
We need to secure this as a non-defective decision.
I would appreciate your views on this.


Regards,
Warren Havens

* The below rule is about the WB Chief, but he did not sign the Dec letter.
Thus to start with, I do not see now these three can cite that their authority is 0.331.


§  0.331   Authority delegated.

   The Chief, Wireless Telecommunications Bureau, is hereby delegated
   authority to perform all functions of the Bureau, described in § 0.131,
   subject to the exceptions and limitations in paragraphs (a) through (d)
   of this section, and also the functions described in paragraph (e) of
   this section.
   * * * *
   (c) Authority concerning applications for review. The Chief, Wireless
   Telecommunications Bureau shall not have authority to act upon any
   applications for review of actions taken by the Chief, Wireless
   Telecommunications Bureau pursuant to any delegated authority, except

1

that the Chief may dismiss any such application that does not comply
with the filing requirements of § 1.115 (d) and (f) of this chapter.

----- Forwarded Message -----
**From:** David Hill <DHill@HallEstill.com>
**To:** "W. Havens, Skybridge Spectrum Foundation, komå nú griðastaðir" <warren.havens@sbcglobal.net>
**Cc:** "jstobaugh@telesaurus.com" <jstobaugh@telesaurus.com>
**Sent:** Wednesday, December 18, 2013 11:39 AM
**Subject:** Settlement Agreement/closing

Gentlemen,

The Dec. 6 FCC letter completes the FCC actions required by the Settlement Agreement.  The Dec. 6 action
becomes final Jan. 15, 2014.
All other FCC actions are final or will be final by Jan. 15.  Thus, we should confer to review closing procedures
and set date for closing.
Let me know     when you are available for conference call.

Regards,

David Hill

This e-mail message and any attachment thereto is intended only for the use of the individual or entity to which it is addressed and may contain information that is
privileged, confidential and exempt from disclosure under applicable law.
If the recipient or reader of this message is not the intended recipient, you are hereby notified that any dissemination , distribution or copying of this communication
is strictly prohibited. If you have received this e-mail communication in error, please notify us immediately by sending a reply e-mail message to the sender. Thank
you.
Hall Estill
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
www.hallestill.com

**EXHIBIT 18**

**Friedman, Kenneth**

---

**From:** eitt líf. koma nú. griðastaðir [warren.havens@sbcglobal.net]
**Sent:** Monday, January 13, 2014 3:18 PM
**To:** David Hill
**Cc:** jstobaugh@telesaurus.com
**Subject:** Re: closing documents

I doubt if we will have any problems with the closing docs, but we will check.
Thanks

---

**From:** David Hill <DHill@HallEstill.com>
**To:** "warren.havens@sbcglobal.net" <warren.havens@sbcglobal.net>
**Cc:** "jstobaugh@telesaurus.com" <jstobaugh@telesaurus.com>
**Sent:** Monday, January 13, 2014 1:10 PM
**Subject:** closing documents

Attached are closing documents for assignments.  Revisions were made to forms attached to SA.
The parties were identified and SA was referenced.  Any problems, let us know.

David Hill

---

This e-mail message and any attachment thereto is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.
If the recipient or reader of this message is not the intended recipient, you are hereby notified that any dissemination , distribution or copying of this communication is strictly prohibited. If you have received this e-mail communication in error, please notify us immediately by sending a reply e-mail message to the sender. Thank you.
Hall Estill
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
www.hallestill.com

**EXHIBIT 19**

=====

**From:** David Hill <DHill@HallEstill.com>
**To:** "warren.havens@sbcglobal.net" <warren.havens@sbcglobal.net>
**Cc:** "jstobaugh@telesaurus.com" <jstobaugh@telesaurus.com>
**Sent:** Thursday, January 16, 2014 10:02 AM
**Subject:** Closing - Settlement Agreement(SA)/Assignments Agreement(AA)

Mr. Havens,

Following up on our telephone conference of 1/14/14, this is to advise that PSI/TT ( PSI)is prepared to  close at 2 PM PST on 1/21/14 as contemplated in Sec. 8.1(a) of the AA.

The FCC Dismissals became final as of 1/15/14.  Thus, all FCC action, including the FCC Consents. are now final.  Sec. 8.1(a) provides for closing no latter than 3rd business day after finality of consents.  However, since Dismissals are to be completed concurrently with closing of assignments (SA item 6) and Dismissals not final until1/15/14 closing could not have been earlier.

The closing method is provided in Sec. 8.1(b) of AA.  Based on our review, outlined below are actions to be taken at closing:
1.  PSI to deliver to Havens entities(HE) Officers Certificates and Assignment and Assumption Agreements for Great Lakes and Hawaii licenses.

2. HE deliver Officers Certificates and Assignment and Assumption Agreements for Southern California partioned license.

3.  Each assignee will notify FCC of consummation of respective assignments.

4. It is PSI's position that it has complied with its obligations under item 12 of SA.  See earlier letter from E. Hahm to T. Richards.

5.  HE will cause Stipulation of Dismissal of Court action to be executed by attorney of record on form  provided earlier and delivered to PSI' NJ counsel for filing with court.

If you have any questions, let me know.  I suggest that we confer before the !/21/14 closing to review procedures and address any logistical issues to help ensure a smooth closing.

David Hill
On behalf of Paging Systems, Inc.

---

This e-mail message and any attachment thereto is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.
If the recipient or reader of this message is not the intended recipient, you are hereby notified that any dissemination , distribution or copying of this communication is strictly prohibited. If you have received this e-mail communication in error, please notify us immediately by sending a reply e-mail message to the sender. Thank you.
Hall Estill
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
www.hallestill.com

IRS CIRCULAR 230 DISCLOSURE: To comply with requirements imposed by the Department of the Treasury, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written by the practitioner to be used, and that it cannot be used by any taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer, and (ii)

**EXHIBIT 20**

**Friedman, Kenneth**

**From:** eitt líf. koma nú. griðastaðir [warren.havens@sbcglobal.net]
**Sent:** Tuesday, January 21, 2014 1:06 PM
**To:** David Hill; jstobaugh@telesaurus.com
**Subject:** Re: SA/AA closing

Mr. Hill,

As you know, we have asked PSI TT directly, and via you, to please complete required tasks under the Settlement Agreement (SA), in particular ways. This was done orally and in writing. (This includes, among others, the rule 1.935 undertakings that were specified in the SA: independent of FCC actions that are not yet beyond challenge [I know you characterize that as "final," without responding to my particular points], the SA required actions that complied with this rule. Contract law is different from FCC law.)

We have not gotten direct and particular responses.

There are other matters also to be addressed.

We will be sending you a list soon, but probably not today, seeking that both PSI and TT perform actions required under the SA, or if they will not, to explain why not on each item.

As you know, yesterday was a federal holiday, and today DC federal offices are closed,* and some items I had planned to take up with the FCC today related to the Settlement Agreement that I described to you is not possible until FCC reopens.

Your Jan 16 email is referenced below, but you did not include it. When email on a topic is split up, it creates confusion in the record. I pasted in below this Jan 16 email (below the dotted line below). In your Jan 16 email, you indicated PSI's position but not TT position in items 4 and 5, and overall do not include both PSI and TT in the SA tasks you described. If PSI and TT are not acting together, that is a modification of the SA as far as I can tell. Also, it was my understanding that you only represented PSI-TT together, and only on FCC matters, not matters of the NJ case. These matters are unsettled for these reasons. I have always been available to Ms. Cooper for PSI and Mr. Cooper for TT, for clarity on all SA matters.

Closing cannot take place until all required actions under the SA to be completed prior to closing are satisfied. We again seek PSI and TT cooperation under the covenants in the SA, and in addition for good faith dealings.

The last in that regard: I agree to Mr. Cooper's request direct request to me, which I took to be for PSI, that PSI have until the end of 2013 to get all transmitters and any signals therefrom off the air. At that time, Mr. Cooper asked if he- PSI-TT could do anything for me. I asked and Mr. Cooper agreed that he would respond to the SA provisions that deal with ongoing discovery obligations and certain documentation. Jimmy sent Robert the fax with itemization of documents that must exist (since there are public records that show they must exist). I thus had expectation of a particular direct response, and documents provided. In addition to SA contract terms, I am pointing here to comfort level in direct communications. No offense, but often attorneys and other middle-persons get in the way. They may believe they are protecting a client, but it often has an adverse affect. I always try to deal direct, do not like "games" (even if they are legally permissible) especially in a more complex matter and one that also has an ongoing relation (the border agreement in the contemplated assignment in Southern California, would be an ongoing mutual obligation and relation).

1

Regards,
Warren Havens

\* http://www.opm.gov/policy-data-oversight/snow-dismissal-procedures/current-status/

**From:** David Hill <DHill@HallEstill.com>
**To:** "warren.havens@sbcglobal.net" <warren.havens@sbcglobal.net>; "jstobaugh@telesaurus.com"
<jstobaugh@telesaurus.com>
**Sent:** Tuesday, January 21, 2014 6:01 AM
**Subject:** FW: SA/AA closing

Gentlemen,

Any questions today concerning closing, I can be reached by phone at 302-227-2437.

David Hill

---

**From:** David Hill
**Sent:** Tuesday, January 21, 2014 7:56 AM
**To:** David Hill
**Subject:** FW: SA/AA closing

---

**From:** David Hill
**Sent:** Monday, January 20, 2014 12:56 PM
**To:** warren.havens@sbcglobal.net
**Cc:** jstobaugh@telesaurus.com
**Subject:** SA/AA closing

Mr. Havens,

We have reviewed your 1/16/14 e-mail where you raise concerns about the "finality" of dismissals as specified in the FCC Dec. 6 letter.

None of the actions taken in the Dec. 6 letter have been rescinded or stayed. There are no pending requests for stay   or review and the time for petitions for review by third parties ant for FCC review has passed.  Thus, consistent with Sec. 7.1 ( c ), the Dec. 6 letter is a Final Order and all actions taken were final as of 1/15/14.

As noted in my e-mail of 1/16/14, the closing as required by Sec. 8.1 ( a ) is set for Tuesday, Jan. 21 at 2PM PST.

Consistent with Sec. 8.1 ( b ), PSi will deliver its Officers Certificates (OC) and Assignment  and Assumption       Agreements (AAA) to your e-mail address.

Please send your OC and AAA to my e-mail address.  Your NJ attorney of record should arrange on Jan. 21 to deliver the executed dismissal stipulation to Ken Friedman, PSI's NJ counsel.

If you have any questions, let me know as soon as possible.

Thank you for your cooperation.

David Hill
Counsel for Paging Systems, Inc.

===============================================================

[ Below pasted in, as I note above.  - W. Havens]

2

**EXHIBIT 21**

**Friedman, Kenneth**

**From:** David Hill
**Sent:** Friday, February 07, 2014 9:29 AM
**To:** eitt líf. koma nú. griðastaðir; jstobaugh@telesaurus.com
**Subject:** RE: SA/AA closing

Mr. Havens,

I have been informed that Mr. Cooper has finished his further review of files and has no additional documents responsive to #12 of SA other than documents filed with or released by FCC.

It is PSI/TT's position that all conditions of SA have been met.  All FCC actions are final.  Since time is of the essence and FCC assignment consents expire at the end of the month, we are ready to close on Friday, Feb. 14 at 2PM PST or earlier date if you desire.

We have reviewed your concerns about the "dismissals" and Sec. 1.935.  However,  under definition of finality used in SA, all FCC actions are final.  No petitions have been filed and FCC has not sought review on its own motion.  If you desire, I will join you in telephone conference with Mr. Stone on this point early next week.

I know you wanted to discuss Sa/closing ideas with Mr. Cooper,but understand he is very busy.  I am available to listen to any ideas you have that will expedite the closing.  We should do this early next week to ensure smooth closing on Feb. 14.

Let me know if you have any questions.  I am available Monday, Feb. 10 and Tuesday, Feb. 11 from noon until 7 PM EST ( 9AM - $PM PST ) for conference call with you and/or Mr. Stone.

David Hill
On behalf of PSI/TT

1

**EXHIBIT 22**

**Friedman, Kenneth**

---

**From:** eitt líf. koma nú. griðastaðir [warren.havens@sbcglobal.net]
**Sent:** Monday, February 10, 2014 3:45 PM
**To:** David Hill; jstobaugh@telesaurus.com
**Subject:** W. Havens letter sent to R. Cooper of today / Re: SA/AA closing

Mr. Hill,
Mr. Hill,

Please see attached.
We noted to you that we would be sending a memo along these lines to Mr. Cooper and, as in the past, we cc you.
My side does not waive any condition required for closing of the SA/AA.
We have been specific as to unfulfilled conditions, and note more in the attached.
We also have a proposal for resolution in the attached.

Regards,
Warren Havens

**EXHIBIT 23**

**Friedman, Kenneth**

| Attachments: | 20140214193904.pdf; 20140214193847.pdf; 20140214193835.pdf; 20140214193819.pdf; 20140214193758.pdf; 20140214193744.pdf |

From: Masters, Patricia
Sent: Friday, February 14, 2014 4:57 PM
To: warren.havens@sbcglobal.net
Cc: Hahm, Eugene
Subject: Paging Systems, Inc.

Mr. Havens,

The attached is being forwarded on behalf of Eugene L. Hahm.

Thank you.

Patricia Masters
Legal Secretary
_____

Manatt, Phelps & Phillips, LLP
1841 Page Mill Road
Palo Alto, CA  94304
D (650) 812-1329   F (650) 213-0260

PMasters@manatt.com<mailto:PMasters@manatt.com>
manatt.com
CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this message is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply email and destroy the original transmission and its attachments without reading them or saving them to disk. Thank you.

ASSIGNMENT AND ASSUMPTION

This ASSIGNMENT AND ASSUMPTION ("Assignment and Assumption"), dated _Feb. 14___, 2014, (the "Assignment Effective Date"), is by and among Paging Systems, Inc. (the "ASSIGNEE"), and Skybridge Spectrum Foundation (the "ASSIGNOR"), each a party to that certain Assignments Agreement dated as of April 8, 2013 by and between ASSIGNEE and ASSIGNOR (the "Assignments Agreement") which is part of a Settlement Agreement by and between Touch Tel Corp and Paging Systems, Inc. (together "PSI") and Warren Havens, Skybridge Spectrum Foundation, Verde Systems LLC, Environmentel LLC, Intelligent Transportation & Monitoring Wireless, LLC, Telesaurus Holdings GB, LLC, Environmentel-2 LLC, and V2G LLC (the "Settlement Agreement") also dated April 8, 2013.

Each capitalized term used herein but not defined herein has the meaning assigned thereto in the Assignments Agreement.

As obligations under the Assignments Agreement, and governed by the terms of the Assignments Agreement, ASSIGNEE and ASSIGNOR execute the following assignment and assumption.

1     ASSIGNMENT OF ASSIGNED LICENSE

Each ASSIGNOR entity hereby grants, sells, conveys, assigns, transfers, and delivers unto ASSIGNEE all of its right, title and interest in and to the ASSIGNED LICENSE.

2.     ASSUMPTION OF RIGHTS AND OBLIGATIONS

ASSIGNEE hereby accepts all of the right, title and interest of each ASSIGNOR entity in and to the ASSIGNED LICENSE. ASSIGNEE hereby assumes and undertakes to pay, discharge and perform the FCC-licensee obligations under the ASSIGNED LICENSE as set forth in the Assignments Agreement.

3.     GENERAL PROVISIONS

a.     No provision of this Assignment and Assumption shall in any way supersede, modify, replace, amend, change, rescind, exceed, enlarge, in any way affect, or restrict the terms of the Assignments Agreement or constitute a waiver or release by ASSIGNEE or ASSIGNOR of any liabilities, duties or obligations imposed upon either of them by the terms of the Assignments Agreement.  If there is a conflict or an apparent conflict between the provisions of this Assignment and Assumption and the provisions of the Assignments Agreement, the provisions of the Assignments Agreement shall control.

b.     This Assignment and Assumption shall be binding upon ASSIGNEE and ASSIGNOR and their respective successors and assigns, and shall be effective on the Assignment Effective Date

       c.     This Assignment and Assumption may be executed and delivered either originally or by electronic transmission or facsimile, and in one or more counterparts, each of which shall be considered an original document, and all of which together shall be considered one and the same document.

     IN WITNESS WHEREOF, ASSIGNEE and ASSIGNOR execute below this Assignment and Assumption on the Assignment Effective Date:

Assignee:  Paging Systems, Inc.

By: _____
Name:  S. Cooper
Title:   President

Assignor:  Skybridge Spectrum Foundation

By: _____
Name:
Title:

ASSIGNMENT AND ASSUMPTION

This ASSIGNMENT AND ASSUMPTION ("Assignment and Assumption"), dated _Feb. 14_, 2014, (the "Assignment Effective Date"), is by and among Paging Systems, Inc. (the "ASSIGNEE"), and Verde Systems LLC (the "ASSIGNOR"), each a party to that certain Assignments Agreement dated as of April 8, 2013 by and between ASSIGNEE and ASSIGNOR (the "Assignments Agreement") which is part of a Settlement Agreement by and between Touch Tel Corp and Paging Systems, Inc. (together "PSI") and Warren Havens, Skybridge Spectrum Foundation, Verde Systems LLC, Environmentel LLC, Intelligent Transportation & Monitoring Wireless, LLC, Telesaurus Holdings GB, LLC, Environmentel-2 LLC, and V2G LLC (the "Settlement Agreement") also dated April 8, 2013.

Each capitalized term used herein but not defined herein has the meaning assigned thereto in the Assignments Agreement.

As obligations under the Assignments Agreement, and governed by the terms of the Assignments Agreement, ASSIGNEE and ASSIGNOR execute the following assignment and assumption.

4      ASSIGNMENT OF ASSIGNED LICENSE

Each ASSIGNOR entity hereby grants, sells, conveys, assigns, transfers, and delivers unto ASSIGNEE all of its right, title and interest in and to the ASSIGNED LICENSE.

5.      ASSUMPTION OF RIGHTS AND OBLIGATIONS

ASSIGNEE hereby accepts all of the right, title and interest of each ASSIGNOR entity in and to the ASSIGNED LICENSES.  ASSIGNEE hereby assumes and undertakes to pay, discharge and perform the FCC-licensee obligations under the ASSIGNED LICENSES as set forth in the Assignments Agreement.

6.      GENERAL PROVISIONS

a.      No provision of this Assignment and Assumption shall in any way supersede, modify, replace, amend, change, rescind, exceed, enlarge, in any way affect, or restrict the terms of the Assignments Agreement or constitute a waiver or release by ASSIGNEE or ASSIGNOR of any liabilities, duties or obligations imposed upon either of them by the terms of the Assignments Agreement.  If there is a conflict or an apparent conflict between the provisions of this Assignment and Assumption and the provisions of the Assignments Agreement, the provisions of the Assignments Agreement shall control.

b.      This Assignment and Assumption shall be binding upon ASSIGNEE and ASSIGNOR and their respective successors and assigns, and shall be effective on the Assignment Effective Date.

        c.      This Assignment and Assumption may be executed and delivered either originally or by electronic transmission or facsimile, and in one or more counterparts, each of which shall be considered an original document, and all of which together shall be considered one and the same document.

      IN WITNESS WHEREOF, ASSIGNEE and ASSIGNOR execute below this Assignment and Assumption on the Assignment Effective Date:

Assignee:  Paging Systems, Inc.

By: _____

Name: S. Cooper

Title:  President


Assignor:  Verde Systems LLC

By: _____

Name:

Title:

ASSIGNMENT AND ASSUMPTION

This ASSIGNMENT AND ASSUMPTION ("Assignment and Assumption"), dated *Feb       14*, 2014 (the "Assignment Effective Date"), is by and among Verde Systems LLC (the "ASSIGNEE"), and Paging Systems, Inc. (the "ASSIGNOR"), each a party to that certain Assignments Agreement dated as of April 8, 2013 by and between ASSIGNEE and ASSIGNOR (the "Assignments Agreement") which is part of a Settlement Agreement by and between Touch Tel Corp and Paging Systems, Inc. (together "PSI") and Warren Havens, Skybridge Spectrum Foundation, Verde Systems LLC, Environmentel LLC, Intelligent Transportation & Monitoring Wireless, LLC, Telesaurus Holdings GB, LLC, Environmentel-2 LLC, and V2G LLC (the "Settlement Agreement") also dated April 8, 2013.

Each capitalized term used herein but not defined herein has the meaning assigned thereto in the Assignments Agreement.

As obligations under the Assignments Agreement, and governed by the terms of the Assignments Agreement, ASSIGNEE and ASSIGNOR execute the following assignment and assumption.

7.    ASSIGNMENT OF ASSIGNED LICENSE

Each ASSIGNOR entity hereby grants, sells, conveys, assigns, transfers, and delivers unto ASSIGNEE all of its right, title and interest in and to the ASSIGNED LICENSES.

8.    ASSUMPTION OF RIGHTS AND OBLIGATIONS

ASSIGNEE hereby accepts all of the right, title and interest of each ASSIGNOR entity in and to the ASSIGNED LICENSES.   ASSIGNEE hereby assumes and undertakes to pay, discharge and perform the FCC-licensee obligations under the ASSIGNED LICENSES as set forth in the Assignments Agreement.

9.    GENERAL PROVISIONS

a.    No provision of this Assignment and Assumption shall in any way supersede, modify, replace, amend, change, rescind, exceed, enlarge, in any way affect, or restrict the terms of the Assignments Agreement or constitute a waiver or release by ASSIGNEE or ASSIGNOR of any liabilities, duties or obligations imposed upon either of them by the terms of the Assignments Agreement.   If there is a conflict or an apparent conflict between the provisions of this Assignment and Assumption and the provisions of the Assignments Agreement, the provisions of the Assignments Agreement shall control.

b.    This Assignment and Assumption shall be binding upon ASSIGNEE and ASSIGNOR and their respective successors and assigns, and shall be effective on the Assignment Effective Date.

c.      This Assignment and Assumption may be executed and delivered either originally or by electronic transmission or facsimile, and in one or more counterparts, each of which shall be considered an original document, and all of which together shall be considered one and the same document.

IN WITNESS WHEREOF, ASSIGNEE and ASSIGNOR execute below this Assignment and Assumption on the Assignment Effective Date:

Assignee:  Verde Systems LLC

By: _____
Name:
Title:

Assignor:  Paging Systems, Inc.

By: _____
Name:  S. Cooper
Title:   President

82997.1·999914·00014

ASSIGNEE'S CLOSING CERTIFICATE

This Certificate is delivered by Paging Systems, Inc. ("ASSIGNEE") to Verde Systems LLC ("ASSIGNOR"), each a party to that certain Assignment Application, File No. 0005735474 which appeared on FCC Public Notice as granted as of September 4, 2013 by and between ASSIGNEE and ASSIGNOR, which was part of a Settlement Agreement, including an Assignments Agreement, by and between Touch Tel Corp and Paging Systems, Inc. (together "PSI") and Warren Havens, Skybridge Spectrum Foundation, Verde Systems LLC, Environmentel LLC, Intelligent Transportation & Monitoring Wireless, LLC, Telesaurus Holdings GB, LLC, Environmentel-2 LLC, and V2G LLC (the "Settlement Agreement") dated April 8, 2013.

The undersigned officer of ASSIGNEE does hereby certify to ASSIGNOR in the capacity as such officer that as of the date hereof:

1.   All of the representations and warranties of ASSIGNEE contained in the Settlement Agreement/Assignments Agreement are true and correct in all material respects as of the Closing, except to the extent waived in writing by ASSIGNOR.

2.   ASSIGNEE has performed and complied in all material respects with all conditions required by the Settlement Agreement/Assignments Agreement to be performed or complied with by it prior to or at the Closing, except to the extent waived in writing by ASSIGNOR.

This Closing Certificate has been delivered this 14 day of February, 2014

Assignee: Paging Systems, Inc.

By: _____

Name and Title: S. Cooper, President

ASSIGNOR'S CLOSING CERTIFICATE

This Certificate is delivered to Verde Systems, LLC ("ASSIGNEE") by Paging Systems, Inc. ("ASSIGNOR"), each a party to that certain Assignment Application, File No. 0005733853 which appeared on FCC Public Notice as granted as of August 28, 2013 by and between ASSIGNEE and ASSIGNOR, which was part of a Settlement Agreement, including an Assignments Agreement, by and between Touch Tel Corp and Paging Systems, Inc. (together "PSI") and Warren Havens, Skybridge Spectrum Foundation, Verde Systems LLC, Environmentel LLC, Intelligent Transportation & Monitoring Wireless, LLC, Telesaurus Holdings GB, LLC, Environmentel-2 LLC, and V2G LLC (the "Settlement Agreement") dated April 8, 2013.

The undersigned officer of each ASSIGNOR entity does hereby certify to ASSIGNEE in the capacity as such officer that as of the date hereof:

1.    All of the representations and warranties of ASSIGNOR contained in the Settlement Agreement/Assignments Agreement are true and correct in all material respects as of the Closing, except to the extent waived in writing by ASSIGNEE.

2.    ASSIGNOR has performed and complied in all material respects with all the conditions required by the Settlement Agreement/Assignments Agreement to be performed or complied with by it prior to or at the Closing, except to the extent waived in writing by ASSIGNEE.

This Closing Certificate has been delivered this _14_ day of _Feb_ , 20_14_

Assignor:  Paging Systems, Inc.

By: _____

Name and Title:  S. Cooper, President

ASSIGNEE'S CLOSING CERTIFICATE


This Certificate is delivered by Paging Systems, Inc. ("ASSIGNEE") to Skybridge Spectrum Foundation ("ASSIGNOR"), each a party to that certain Assignment Application, File No. 0005735519 which appeared on FCC Public Notice as granted as of September 4, 2013 by and between ASSIGNEE and ASSIGNOR, which was part of a Settlement Agreement, including an Assignments Agreement, by and between Touch Tel Corp and Paging Systems, Inc. (together "PSI") and Warren Havens, Skybridge Spectrum Foundation, Verde Systems LLC, Environmentel LLC, Intelligent Transportation & Monitoring Wireless, LLC, Telesaurus Holdings GB, LLC, Environmentel-2 LLC, and V2G LLC (the "Settlement Agreement") dated April 8, 2013.

The undersigned officer of ASSIGNEE does hereby certify to ASSIGNOR in the capacity as such officer that as of the date hereof:

1.      All of the representations and warranties of ASSIGNEE contained in the Settlement Agreement/Assignments Agreement are true and correct in all material respects as of the Closing, except to the extent waived in writing by ASSIGNOR.

2.      ASSIGNEE has performed and complied in all material respects with all conditions required by the Settlement Agreement/Assignments Agreement to be performed or complied with by it prior to or at the Closing, except to the extent waived in writing by ASSIGNOR.

This Closing Certificate has been delivered this _14_ day of _February_, 20_14_


                              Assignee: Paging Systems, Inc.

                              By: _____

                              Name and Title: S. Cooper, President

**EXHIBIT 24**

# PUBLIC NOTICE

**Federal Communications Commission**
445 12th St., S.W.
Washington, D.C. 20554

News Media Information 202 / 418-0500
Internet: http://www.fcc.gov
TTY: 1-888-835-5322

---

**Report Number: 9392**                                          **Date of Report: 02/26/2014**

---

### Wireless Telecommunications Bureau
**Assignment of License Authorization Applications, Transfer of Control of Licensee Applications,**
***De Facto* Transfer Lease Applications and Spectrum Manager Lease Notifications,**
**Designated Entity Reportable Eligibility Event Applications, and Designated Entity Annual Reports**
**Action**

This Public Notice contains a listing of applications that have been acted upon by the Commission.

## Assignment of License Authorization Applications and Transfer of Control of Licensee Applications

| Purpose | File Number | Parties | | Action Date | Action |
|---------|-------------|---------|---|-------------|--------|
| AA | 0004193328 | **Assignor:** | Maritime Communications/Land Mobile, LLC | 02/19/2014 | Z |
|    |            | **Assignee:** | Duquesne Light Company | | |

**Partial Assignment**

**Call Sign or Lead Call Sign:** WHG750

**Radio Service Code(s)**
MC

| | | | | | |
|---------|-------------|---------|---|-------------|--------|
| AA | 0005227714 | **Assignor:** | LightSquared Subsidiary LLC | 02/19/2014 | Q |
|    |            | **Assignee:** | LightSquared Subsidiary LLC, Debtor-in-Possession | | |

**Full Assignment**

**Call Sign or Lead Call Sign:** WQMN726

**Radio Service Code(s)**
IG

| Purpose | File Number | Parties | | Action Date | Action |
|---------|-------------|---------|---|-------------|--------|
| AA | 0005227714 | **Assignor:** | LightSquared Subsidiary LLC | 02/19/2014 | Q |
|  |  | **Assignee:** | LightSquared Subsidiary LLC, Debtor-in-Possession |  |  |

**Full Assignment**

**Call Sign or Lead Call Sign:** WQMN726

**Radio Service Code(s)**
MM

| | | | | | |
|---------|-------------|---------|---|-------------|--------|
| AM | 0005675493 | **Assignor:** | CLS TRANSPORTATION LAS VEGAS | 02/19/2014 | Z |
|  |  | **Assignee:** | VEGAS WIRELESS LLC |  |  |

**Full Assignment**

**Call Sign or Lead Call Sign:** WPRL298

**Radio Service Code(s)**
YG

| | | | | | |
|---------|-------------|---------|---|-------------|--------|
| AA | 0005687597 | **Assignor:** | Dynamic Broadband | 02/18/2014 | C |
|  |  | **Assignee:** | Skybeam Acquisition Corporation |  |  |

**Full Assignment**

**Call Sign or Lead Call Sign:** WQJU954

**Radio Service Code(s)**
CF

MG

NN

| | | | | | |
|---------|-------------|---------|---|-------------|--------|
| AA | 0005735474 | **Assignor:** | Verde Systems LLC | 02/21/2014 | M |
|  |  | **Assignee:** | Paging Systems, Inc. |  |  |

**Partitioning AND/OR Disaggregation**

**Call Sign or Lead Call Sign:** WQCP816

**Radio Service Code(s)**
PC

| Purpose | File Number | Parties | | Action Date | Action |
|---------|-------------|---------|---|-------------|--------|
| AA | 0005735519 | **Assignor:** | Skybridge Spectrum Foundation | 02/21/2014 | M |
|    |            | **Assignee:** | Paging Systems, Inc. | | |

**Partitioning AND/OR Disaggregation**

    **Call Sign or Lead Call Sign:** WQJW656

    <u>**Radio Service Code(s)**</u>

        PC

| Purpose | File Number | Parties | | Action Date | Action |
|---------|-------------|---------|---|-------------|--------|
| AA | 0005785820 | **Assignor:** | NEW YORK DOWNTOWN HOSPITAL | 02/19/2014 | M |
|    |            | **Assignee:** | New York Presbyterian Hospital | | |

**Full Assignment**

    **Call Sign or Lead Call Sign:** WQJI534

    <u>**Radio Service Code(s)**</u>

        IG

| Purpose | File Number | Parties | | Action Date | Action |
|---------|-------------|---------|---|-------------|--------|
| TC | 0005875042 | **Licensee:** | Hager Telecom, Inc. | 02/22/2014 | M |
|    |            | **Transferor:** | Blue Earth Valley Communications, Inc | | |
|    |            | **Transferee:** | Rural Communications Holding Corporation | | |

**Transfer of Control**

    **Call Sign or Lead Call Sign:** WNNB286

    <u>**Radio Service Code(s)**</u>

        IG

| Purpose | File Number | Parties | | Action Date | Action |
|---------|-------------|---------|---|-------------|--------|
| AA | 0005888673 | **Assignor:** | Alacer East LLC | 02/19/2014 | M |
|    |            | **Assignee:** | Alacer Corporation | | |

**Full Assignment**

    **Call Sign or Lead Call Sign:** WQOS322

    <u>**Radio Service Code(s)**</u>

        IG

**EXHIBIT 25**

# US *Advanced Railroad Wireless* (ARW)

# *Using PTC as a foundation for ARW*

### January 2014 - V2

### SkyTel - W. Havens

"SkyTel" means Skybridge Spectrum Foundation, Telesaurus Holdings GB LLC, Environmentel LLC, Verde Systems LLC, Intelligent Transportation ...LLC, and V2G LLC.  Warren Havens is President of these companies.

This partial, public version is filed in <u>FCC docket 11-79</u>, January _ , 2014.

This is filed in this docket for purposes stated by the FCC, and in response to recent ex parte presentations by some railroads' that implicate SkyTel, SkyTel's ATMS licenses, our offers of AMTS spectrum to railroads, and the public interest the FCC indicates in opening and conducting this docket.



Credit: Nokia Siemens



*SkyTel*

The *SKYTEL* group holds a broad, unique assembly of radio spectrum in the *900, 200 & 40 MHz* ranges nationwide, listed in *Section 6* below, as the *foundation\** for nationwide wireless for smart transport, energy and environment systems, with high-accuracy PNT\* (which we call "*Terranautics*") in public-private-nonprofit partnerships.

*Advanced Railroad Wireless (ARW)*, outlined herein, is within *Terranautics*.

*This PPT illustrates components and benefits of Terranautics, not only of ARW.*

\* **7   SPECTRUM: ENABLER AND LIFEBLOOD**

The availability (or not) of adequate RF spectrum in appropriate bands, and suitably clear of other services or interfering signals, is a fundamental precondition to implementing any new radio technology for any application. LTE is no different in this respect to those technologies that have come before it, or indeed those that may eventually supersede it. Spectrum is truly the enabler and lifeblood of any new system coming to market, and it is a distinctly scarce and finite resource globally.

 **LTE for Critical Communications**
Drivers, Benefits and Challenges 

Above excerpts is from the publication listed above, copy at:
http://www.p3-group.com/downloads/4/1/7/5/2012-06_P3_-_LTE_for_Critical_Communications_-_White_Paper_-_v2_0.pdf

\*" Position,  Navigation and Timing," as used in the GNSS/ radiolocation industry.

 *SkyTel*

## *Contents*

(i) *PTC background:* **Bad benefits/cost, tech and excuses.** <u>Good</u> **as platform for AWR.**

1. *Corridor* ARW plan (NEC used as example) is sane, but a plan with independent railroad wireless systems and spectrum is severely wasteful, and hardly possible with available spectrum and public funding.

2. *Wideband* contiguous spectrum and benefits, including in 200 MHz.

3. *High Accuracy Location* (HALO) with one-way Broadcast data, for "RCAS" - Railroad Collision Avoidance Systems (i) makes PTC *redundant*, and (ii) is, by an order or magnitude or more, more cost effective to deploy and maintain, and is needed anyway for ARW.

4. *Advanced Railroad Wireless* (ARW-CW-HALO) (ARW for <u>C</u>orridors with <u>W</u>ideband and <u>H</u>igh <u>A</u>ccuracy <u>Lo</u>cation).

5. *Security.* Deficiencies in one -band, one -mode PTC systems vs. multi-mode ARW.

6. *Spectrum* licenses of SkyTel entities: 217-220, 904-910+, 35/43 MHz, and SkyTel.
   - SkyTel obtained these for nationwide smart transport, energy and environment systems, which can include *ARW.*
   - Persons too fixed on PTC are not in a position to consider or pursue *ARW*, as we experience. It may even be seen (falsely) as a threat.
   - We present *ARW* as part of our nationwide plans, including to persons in various federal agencies Congress, and other public entities. Public-private-nonprofit (all 3 sectors) are best combination.

 *SkyTel*

# - 6 -

# SkyTel

*AMTS* **217 - 220** *MHz*
*M-LMS* **904 - 910** *MHz*
*& Lowband* **35** / **43** *MHz*

For nationwide
smart transport, energy and environment systems
which can include ARW

 *SkyTel*

## SkyTel FCC Licenses

**900 MHz wide-block M-LMS**, ˜80+% of US,  6 MHz total, held by:
Telesaurus Holdings GB LLC, Skybridge Spectrum Foundation
(Renewal applications pending)

**900 MHz** Part 22 and MAS, ˜99% of the US, held by:
Skybridge Spectrum Foundation, V2G LLC, Intelligent Transportation & Monitoring Wireless LLC

**200 MHz AMTS**,  ˜95% of US,  1-2 MHz total, held by:
Environmentel LLC, Verde Systems LLC, Intelligent Transportation & Monitoring Wireless LLC,
Skybridge Spectrum Foundation
(Potentially others under pending FCC proceedings.)

**43 and 35 MHz**, ˜99% of US two-way, and 100% one-way,  300-600 kHz total, held by:
V2G LLC, Environmentel LLC, Intelligent Transportation & Monitoring Wireless LLC,
Skybridge Spectrum Foundation

The licenses described herein may be confirmed via the FCC's online databases by going to the following link,
clicking on the "Advance License Search" section and then entering in the Licensee's name in the licensee-name
field.  http://wireless2.fcc.gov/UlsApp/UlsSearch/searchLicense.jsp

Following pages do not further describe the MAS and 220 MHz licenses: see FCC ULS.

 *SkyTel*

□ AMTS Licenses, *1 MHz* bandwidth in each block, in lower *200 MHz*.

□       Licensees: Environmentel, Verde Systems, Skybridge Spectrum Foundation, and Intelligent Transportation...Wireless.

□



Verde obtained the B-bock *Great Lakes license* in 3Q 2013.
FCC approval granted.   Will be consummated soon.

Note: some of the spectrum (one half or less of total ) in parts of market areas 1 and 7 have been sold-assigned to power utilities (as of 1Q 2013).

 SkyTel