UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SKYBRIDGE SPECTRUM FOUNDATION, a Delaware nonprofit corporation;  WARREN C. HAVENS, an individual; TELESAURUS VPC, LLC, a Delaware Limited Liability Company; AMTS CONSORTIUM, LLC, a Delaware Limited Liability Company; INTELLIGENT TRANSPORTATION & MONITORING, LLC, a Delaware Limited Liability Company; and TELESAURUS HOLDINGS GB, LLC, a Delaware Limited Liability Company, <br><br>         Plaintiffs, <br> v. <br><br> MOBEX NETWORK SERVICES, LLC, a Delaware Limited Liability Company; MARITIME COMMUNICATIONS/LAND MOBILE, LLC, a Delaware Limited Liability Company, PAGING SYSTEMS, INC., a California corporation; TOUCH TEL CORPORATION, a California corporation, and DOES 1-100, <br><br>         Defendants. | Civil Action No. 2:11-CV-00993-KSH-CLW |

DEFENDANT MARITIME COMMUNICATIONS/LAND MOBILE, LLC'S *SECOND THURSDAY* SUBMISSION

Robert W. Mauriello, Jr., Esq.
Kelley J. Hastie, Esq.
GRAHAM CURTIN
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey  07962-1991
(973) 292-1700
Attorneys for Defendants
Maritime Communications/Land Mobile, LLC

Defendant Maritime Communications/Land Mobile, LLC ("MCLM") respectfully submits this brief in response to the Court's request for further explanation of the *Second Thursday* doctrine before the Federal Communications Commission ("FCC") in connection with the proposed transfer of certain geographic and site-based licenses under MCLM's Confirmed Plan of Reorganization to Choctaw Telecommunications, LLC and Choctaw Holdings, LLC (collectively, "Choctaw").  As explained below, the *Second Thursday* doctrine is irrelevant to this action regarding Plaintiffs' Sherman Act claim – Plaintiffs have not alleged that Paging Systems, Inc. or Touch Tel Corporation ("PSI-TT") were involved in a conspiracy for MCLM to file bankruptcy and invoke the *Second Thursday* doctrine.  To the contrary, and despite the fact that Plaintiffs have involved themselves in both the FCC Action regarding the Hearing Designation Order and MCLM's Bankruptcy Action, PSI-TT has never been made a party to either action and there has been no suggestion anywhere that PSI-TT is somehow involved in the FCC's application of the *Second Thursday* doctrine for the transfer of MCLM's licenses.

While the FCC generally does not permit the assignment of licenses involved in a hearing related to the character qualifications of the license holder,  *Jefferson Radio Co. v. FCC,* 340 F.2d 781, 783 (D.C. Cir. 1964),  the *Second Thursday* doctrine is a well-established exception that has been repeatedly applied when (as here) certain factors are met.  Specifically, in order to accommodate bankruptcy law and protect innocent creditors, the FCC will terminate any pending hearing and permit the licensee to assign its licenses to a qualified third party, if the following three factors are satisfied:  (i) the licensee designated for hearing is in bankruptcy; (ii) the individual(s) charged with misconduct would have no part in the proposed future operations of the licensee; and (iii) the individual(s) charged with misconduct would derive little or no benefit from the transaction.  *Second Thursday Corp.,* Memorandum Opinion and Order, 22 FCC

2d 515, 516, *recon. granted,* 25 FCC 2d 112, 114-15 (1970) ("*Second Thursday")*; *LaRose v. FCC*, 494 F.2d 1145, 1146 n.2 (D.C. Cir. 1974) ("*LaRose*").  In *LaRose,*the United States Court of Appeals for the D.C. Circuit addressed the interplay of the *Second Thursday* doctrine and bankruptcy proceedings, explaining that: "Administrative agencies have been required to consider other federal policies, not unique to their particular area of administrative expertise, when fulfilling their mandate to assure that their regulatees operate in the public interest."  The Court then opined that the FCC must "accommodate[] the policies of federal bankruptcy law with those of the Communications Act."  *LaRose*, 494 F.2d at 1146 n.2; *New DBSD Satellite Services G.P.*, 25 FCC Rcd 13664 (IB 2010) (citing *LaRose*, 494 F.2d 1145) (the FCC "seeks, where possible within the framework of the requirements of the Communications Act, to accommodate the policies of the Bankruptcy Code and the findings of bankruptcy courts").

Following the *LaRose* decision, the FCC has applied the *Second Thursday* doctrine consistently and frequently, including during the pendency of this action, to large and small companies alike.  *See, e.g., In re Worldcom, Inc.*, 18 FCC Rcd 2648431 (2003) (granting *Second Thursday* transfer where Debtor-In-Possession ("DIP") was multinational company with 55,000 employees and 221 subsidiaries); *In re MobileMedia*, 14 FCC Rcd 8017 (1999) (granting *Second Thursday* transfer where DIP was "fourth largest paging company in the United States"); s*ee also In re JBS, Inc.*, 29 FCC Rcd 1121 (2014) (granting transfer); *In re Shareholders of Stop 26 Riverbend, Inc.*, 27 FCC Rcd 6516 (2012) (same); *In re Eddie Floyd*, 26 FCC Rcd 5993 (2011) (same); *In re Family Broadcasting*, 25 FCC Rcd 7591 (2010) (same); *see also Pyle Communications of Beaumont, Inc.*, 4 FCC Rcd 8625, 8628 (1989)  (concluding that "minor benefits," such as those associated with the elimination of secondary liability, do not preclude

- 2 -

*Second Thursday* relief because the benefits are "outweighed by the equitable considerations favoring innocent creditors").

Each of the *Second Thursday* factors is satisfied with regard to the MCLM hearing.  First, MCLM filed for and received bankruptcy protection – as the Court is aware, the Bankruptcy Court has entered an Order confirming MCLM's Plan of Reorganization, which contemplates the transfer of certain geographic and site-based licenses to Choctaw.  Second, the sworn testimony at trial confirmed that the DePriests will have no ongoing role with Choctaw.  Lastly, the DePriests will receive no cognizable benefit from the proposed transaction – they will lose their entire investment in MCLM and receive no funds in the future from Choctaw or any entity associated with the licenses.  Moreover, the personal guarantees given by Mr. DePriest to certain creditors are not included in the Choctaw Plan of Reorganization – those personal guarantees are excluded from the Plan of Reorganization.  Thus, the personal guarantees remain the obligations of Mr. DePriest if the underlying debts are not paid.

Here, the Bankruptcy Court has confirmed a Plan of Reorganization that would transfer MCLM's remaining licenses to Choctaw pending FCC approval and none of that involves PST-TT in any way.  Plaintiffs have had ample opportunity to involve PSI-TT in both the Bankruptcy Action or MCLM's FCC action but have not done so.  Accordingly, the *Second Thursday* doctrine, and Plaintiffs' arguments against its use,  is irrelevant to this action.

Respectfully submitted,

GRAHAM CURTIN, P.A.
Attorneys for Defendant
Maritime Communications/Land Mobile, LLC


By:    s/ Robert W. Mauriello, Jr.
         Robert W. Mauriello, Jr.

Dated: June 6, 2014

- 3 -

2106280.2